W. V. DORRITY v. GREATER DURHAM BUILDING AND LOAN ASSOCIATION AND C. S. HOLLAND.

(Filed 14 June, 1933.)

**Fraud A e—Evidence held not to bring case within exceptions to rule that failure to read instrument constitutes negligence.**

Where in an action for fraud there is no evidence that plaintiff was illiterate or that he was prevented from reading the agreement by any trick, artifice, scheme or device, and no evidence of any misrepresentation on the part of defendant's agent, and it appears that the agreement signed by plaintiff clearly and in detail set forth the elements of the transaction, the defendant's motion as of nonsuit is properly allowed, the evidence failing to bring the case within any of the exceptions to the rule that the failure to read an instrument constitutes negligence barring a recovery for the failure of the instrument to contain the agreement as understood by plaintiff.

CIVIL ACTION, before *Barnhill, J.,* at September Term, 1932, of DURHAM.

The plaintiff instituted this action against the defendant alleging that an agent of defendant on or about 22 April, 1929, sold to the plaintiff

a membership certificate in the defendant Building and Loan Associa-
tion for the sum of $250.00 and collected therefor in cash, whereas in
truth and in fact the said agent represented to the plaintiff at the time
of sale that he was selling stock in the corporation and the plaintiff
thought he was buying stock therein. Plaintiff said: "Mr. Holland told
me he wanted to sell me some stock in the Greater Durham Building
and Loan at six per cent. He came to me two or three times and I
did not buy. Well he come to me and wanted to sell me the stock and
I bought one hundred shares of stock. I was paying $2.50 per share
for it. I paid him $250.00. He told me he would send me my stock or
bring it to me in a few days, and in two or three days he come up there
and brought me a little book and something there. He said it was my
stock. This is what he brought me." The document referred to by the
plaintiff was the certificate of membership, stating among other things:
"This is to certify that W. V. Dorrity, of Durham, North Carolina, has
paid the sum of two hundred and fifty dollars as a membership payment
and is hereby entitled to membership in, and is a member of the Greater
Durham Building and Loan Association, subject to the by-laws of the
association as they now are, or as they may be hereafter amended, and
one hundred shares of the par value of fifty dollars ($50.00) each are
reserved for said member in accordance with the by-laws, payments
thereon to be made at the rate of not less than twenty-five cents per
share per month," etc.

At the time the membership certificate was delivered the agent also
delivered to the plaintiff a book purporting to be a passbook with spaces
for deposits and withdrawals. The last page of the book states: "This
certifies that W. V. Dorrity, of Durham, North Carolina, is a member
of Greater Durham Building and Loan Association and is the owner
of one hundred shares of stock therein," etc.

On 20 April, 1929, the plaintiff made a written application to the
defendant company as follows: "The undersigned hereby subscribes
for one hundred shares of the capital stock of Greater Durham Building
and Loan Association, a body corporate, incorporated under the laws of
the State of North Carolina, of the par value of $50.00 each, payable
in cash herewith or in monthly installments of not less than twenty-five
cents per share per month, the first of such installment accompanying
this application. I also agree to pay with this subscription a member-
ship payment of $2.50 per share to establish a fund from which you are
authorized to defray expense of organization, extension, operation and
equipment, such as rent, office expense, advertising, solicitors, salesmen,
office help, etc., and to establish a reserve for the association, for which
a membership certificate shall be issued. The membership certificate
does not draw specified dividends but is fully participating in the sur-

plus earnings and profits of the association. The membership certificate is not withdrawable, but may be sold or transferred at any time by holders thereof, together with capital stock account. All other payments together with such dividends as shall have been declared thereon may be withdrawn in accordance with the by-laws of the association. No person is authorized to change or alter the terms of this subscription or to bind the association by any statement not contained herein. A copy of this application and subscription appears on the reverse side of the receipt issued in acknowledgment of this subscription. The Greater Durham Building and Loan Association reserves to itself the right to reject any or all applications for shares and to reduce or allot all applications for shares in the manner deemed by the association to be for its best interest. Signed: W. V. Dorrity."

At the conclusion of all the evidence the trial judge sustained the motion of nonsuit, and the plaintiff appealed.

*R. O. Everett and J. Grover Lee for plaintiff.*
*Fuller, Reade & Fuller and E. C. Brooks, Jr., for defendant.*

BROGDEN, J. There was no evidence that the plaintiff was illiterate or could not read and write, although he testified that he read poorly. The subscription agreement which the plaintiff signed, explained the transaction in detail and advised him positively that he was paying $250.00 for a membership in the defendant corporation, and that in addition to such membership fee he would be required to pay twenty-five cents per share for the stock in accordance with the by-laws of the company. Moreover C. S., 5176 authorizes in proper instances building and loan associations to prescribe an entrance fee to be paid by share holders.

The pertinent and governing principle of law was thus stated in *Colt v. Kimball,* 190 N. C., 169: "It is the defendant's duty to read the contract or have it read to him, and his failure to do so, in the absence of fraud, is negligence, for which the law affords no redress. The defendant's duty to read or have read to him the contract, is a positive duty of which he is not relieved, except in cases of fraud. . . . Having executed the contract, and no fraud appearing in the procurement of the execution, the court is without power to relieve the defendant on the ground that he thought it contained provisions which it does not." The same principle relating to contracts generally is applicable to stock subscription agreements. Thus in *Improvement Co. v. Andrews,* 176 N. C., 280, 96 S. E., 1032, the Court said: "The fact that this is a subscription to stock does not take the case out of the usual rule. It seems to be generally agreed that where a subscription contract is reduced to writing and signed, all oral agreements, whether prior or

cotemporaneous, are merged in it and parol evidence of them cannot be received to vary the legal purport of the writing." See *Hotel Corporation v. Overman,* 201 N. C., 337.

The negligence rule referred to in many of the decisions does not apply: (1) where the person signing the agreement was illiterate or otherwise incapable of understanding the writing; (2) where there is positive misrepresentation of contents of the paper-writing of such type and character as to deceive a person of ordinary prudence and the person signing such agreement reasonably relied upon such misrepresentation; (3) where the party procuring the signature resorted to some device, scheme, subterfuge, trick or other means of preventing or interfering with the reading of the paper or reasonably tending to throw a person of ordinary prudence off guard.

However, none of the foregoing elements appear in this case. There is no evidence that the agent misrepresented the contents of the subscription agreement which the plaintiff signed, nor was there any trick, artifice, scheme or device resorted to tending to prevent or interfere with the reading of the agreement. Therefore, the ruling of the trial judge is correct.

Affirmed.