OMA MINK McLAIN v. SHENANDOAH LIFE INSURANCE CO.

(Filed 3 January, 1945.)

**1. Fraud § 1—**

Fraudulent statements, sufficient to vitiate an instrument, must be false representations of fact, peculiarly within the knowledge of the party making them, and where the parties, dealing at arms length, have equal means of information, so that with ordinary prudence and diligence either may rely upon his own judgment, they are presumed to have done so, and, if not, they must abide the consequences.

**2. Fraud § 11—**

In an action to recover double indemnity on a policy of insurance, where all the evidence tended to show that plaintiff settled with the defendant for the face of the policy, without double indemnity, though plaintiff knew the policy carried a rider providing double indemnity and that defendant was contesting the validity of such rider, and that plaintiff signed a full release after an hour's negotiation with defendant's representatives, having had the policy in her possession for five weeks before the settlement without excuse for not reading it, and that plaintiff relied on alleged false statements of defendant's agents that the double indemnity provision was not effective, a motion for judgment as of nonsuit should have been allowed.

Appeal by defendant from *Clement, J.,* at September Term, 1944, of Forsyth.

This is a civil action to recover upon a double indemnity provision of an insurance policy issued by the defendant upon the life of Robert Sherrill McLain in which the plaintiff, Oma Mink McLain, his wife, was beneficiary. The insured was killed in a collision between the motorcycle on which he was riding and a truck. The plaintiff accepted the check of the defendant for $2,500.00, and executed and delivered a release of all claims against the defendant. The plaintiff now contends that the execution and delivery by her of a release of all claims against the defendant company was procured by misrepresentation and fraud practiced on her by the defendant, and seeks to avoid the release and to recover the double indemnity provided in the policy. The defendant denies that it practiced any misrepresentation or fraud upon the plaintiff.

The policy in suit was first written to cover only indemnity of $2,500.00 upon the death of the insured, but there was subsequently attached thereto a supplemental contract for "Double Indemnity Benefit," which provided for payment of an additional $2,500.00 "if the insured . . ., shall die as a result of any bodily injury effected while not under the influence of intoxicants, directly through external, violent and accidental means, . . . provided such death does not result . . . from any violation of the law."

There arose upon the contradictory allegations and contentions of the plaintiff and defendant the fourth issue which was submitted to the jury, to wit: "4. Was the plaintiff induced to accept the check and execute the release by the fraudulent misrepresentation of the defendant, as alleged in the complaint and reply?"

The jury answered the fourth issue in the affirmative, as contended for by the plaintiff, and the other issues were also answered in favor of the plaintiff. The court entered judgment, predicated on the verdict, that the plaintiff recover of the defendant the amount sued for, namely, $2,500.00. From this judgment the defendant appealed, assigning errors.

*H. H. Leake, Fred S. Hutchins, and H. Bryce Parker for plaintiff, appellee.*

*Womble, Carlyle, Martin & Sandridge for defendant, appellant.*

Schenck, J. The defendant, appellant, states in his brief: "On this appeal the appellant chooses to rely upon its Assignments of Error Nos. 1, 3 and 4, which relate to the signing of the judgment and to the overruling of the defendant's motion for judgment as of nonsuit made at the conclusion of the plaintiff's evidence and renewed at the conclusion of all the evidence." It is the contention of the defendant that there was not

sufficient evidence of fraudulent misrepresentation to be submitted to the jury, and since the plaintiff's alleged cause of action is bottomed upon the allegation of fraud in the procurement of the release executed and delivered by her, the motion of the defendant for a judgment as in case of nonsuit, or to dismiss the action, should have been allowed. There appears in the brief of the plaintiff, appellee, the following: "As stated by the defendant, the sole question now before the Court is whether there was sufficient evidence of fraud for the jury."

We adopt the statement that "the sole question now before the Court is whether there was sufficient evidence of fraud for the jury."

The fraud alleged and relied upon by the plaintiff consisted of the alleged false statements made by the representatives of. the defendant to the plaintiff as to the provisions contained in the policy, namely, that the policy had not been in force long enough to put in effect the provision for double liability, and that the policy did not cover death caused by a motorcycle. The policy, of which she was the beneficiary and which was the subject of the settlement, was in the possession of the plaintiff, and, according to her own testimony, she had known the policy contained double indemnity provision from the time it was issued in December, 1934, that she had access to it during her husband's lifetime and since his death it had been in her possession. The double indemnity contract was on a separate piece of paper attached to the policy and its provisions stated in plain easily understood language. There is no evidence of any resort to artifice or trick to prevent plaintiff from reading the contract. She was literate, and had been for six or seven years helping her father in his business, keeping his books, writing and depositing his checks, and carrying on his correspondence. She testified that she discussed the settlement with the representatives of the defendant for approximately an hour and relied upon their statements as to the provision of the double indemnity contract instead of reading the provision herself. She and the representatives of the defendant were dealing at arms length. She had the contract during the negotiation for settlement and delivered it to said representatives only after she had signed the total release and received the check for $2,500.00.

The plaintiff's own testimony shows that she had every opportunity to know the contents of the double indemnity provision of the insurance contract. If she did not read the provision there was nothing to prevent her from doing so. As to her reading or failure to read such provision her own testimony shows she was a perfectly free agent. She not only had the contract for five weeks prior to the execution of the release, but it was actually in her possession during the discussion of the settlement, which she says lasted an hour. The principle applicable to alleged fraudulent statements relied upon to vitiate an instrument, is stated in

· *Ward v. Heath,* 222 N. C., 470, 24 S. E. (2d), 5, as follows: "It must be a false representation of fact materially affecting the value of the contract and which is peculiarly within the knowledge of the person making it and in respect to which the other person in the exercise of proper vigilance has not an equal opportunity of ascertaining the truth."

The principle with which we are now concerned is also clearly stated in Cooley on Torts (Fourth Edition), at page 580, in the following words: "Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them, and that, therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence."

It has long been a recognized principle of law that where parties have equal means of information, so that with ordinary prudence and diligence, either may rely upon his own judgment, they are presumed to have done so, or, if they have not done so, they must abide the consequences.

Furthermore, it appears from the evidence that the plaintiff had knowledge of the fact that the defendant was contesting any payment under the double indemnity feature of the contract a considerable time before she accepted the check and signed and delivered the release, and notwithstanding this knowledge she relied upon the alleged statements of the defendant's representatives, rather than make her own investigation. "A party having notice must exercise ordinary care to ascertain the facts, and if he fail to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired, had he made the necessary effort to learn the truth of the matters affecting his interests. *Austin v. George,* 201 N. C., 380, 160 S. E., 364; *Wynn v. Grant,* 166 N. C., 39, 81 S. E., 949; *Ewbank v. Lyman,* 170 N. C., 505, 87 S. E., 348; *Sanderlin v. Cross,* 172 N. C., 234, 90 S. E., 213." *Hargett v. Lee,* 206 N. C., 536, 174 S. E., 498.

We are of the opinion, and so hold, that even if the representatives of the defendant company did make to the plaintiff the false statements regarding the provisions of the policy she alleges they made, namely, that the policy had not been written a sufficient length of time to cover death by accident or that the policy did not cover death due to a motorcycle, there was no actionable fraud, for the reason the plaintiff failed to take advantage of the opportunity she had to inspect the policy and to learn the truth as to its provision. Therefore we hold that the Superior Court erred in overruling the defendant's demurrer to the evidence, and in declining to allow his motion for judgment as in case of nonsuit and to

dismiss the action, as on the record it was barred by the statute of limi-
tations.

For the reasons given, the judgment below is

Reversed.