LEOLA FULCHER DAVIS v. JOSEPH NEAL DAVIS.

(Filed 7 March, 1962.)

1. Cancellation and Rescission of Instruments § 8; Torts § 7—

Allegations that insurer's agent misrepresented to plaintiff that the instrument related only to her medical and hospital bills, that she was told that the doctor was demanding payment and she had no means to pay, that at the time she executed the release she was sick and suffering pain resulting from the injuries negligently inflicted, and that she did not read the instrument because of these facts and could not have understood it if she had attempted to read it, are *held* sufficient to charge that the release was obtained by fraud.

2. Cancellation and Rescission of Instruments § 10; Torts § 7— Evidence that release was obtained by fraud held sufficient to be submitted to jury.

Evidence to the effect that plaintiff had finished only the sixth grade in public school, had difficulty understanding what she reads, that the insurer's agent obtained a statement in regard to the accident in which plaintiff was injured from her husband, inquired of plaintiff as to her hospital and medical expenses, stated he was going to give her money to pay them if she would sign a paper which he handed her in such manner as to conceal the writing, and that the paper was a release of her husband from liability for injuries received in the accident, *is held* sufficient to be submitted to the jury on the issue of whether the release was obtained by fraud.

3. Cancellation and Rescission of Instruments § 2—

In order to obtain relief from the contract on the ground of fraud a party must show a false factual representation made with knowledge of its falsity or in culpable ignorance of its truth or falsity, with fraudulent intent, and that the misrepresentation was material and reasonably relied upon.

4. Cancellation and Rescission of Instruments § 2—

Ordinarily, a person who signs a written instrument without reading it when he has opportunity to do so understandingly is bound thereby, and

DAVIS *v.* DAVIS.

may avoid the legal consequences of the instrument only by showing that he executed it in reliance on false representations or under special circumstances, and that a person of ordinary prudence would have so executed the instrument under like conditions, and the failure of the court to charge the jury in regard to whether a person of ordinary prudence would have executed the instrument under the same or similar circumstances must be held for prejudicial error.

**5. Cancellation and Rescission of Instruments § 10;    Fraud § 11—**

Inadequacy of consideration, while evidence of fraud, is ordinarily insufficient alone to take the issue of fraud to the jury.

WINBORNE, C.J., not sitting.

PARKER, J., dissents.

APPEAL by defendant from *Walker, S.J.,* August 1961 Term of CARTERET.

Plaintiff seeks to recover damages from her husband, defendant, for injuries sustained when the automobile operated by her husband and occupied by her as his guest collided with an automobile proceeding ahead of defendant when that car stopped to permit oncoming traffic to pass so that it might make a left turn. She alleges the collision which occurred 4 April 1959 was proximately caused by the negligence of defendant.

Defendant denied the asserted negligence and as an additional defense he pleaded a release executed by plaintiff on 21 April 1959.

Plaintiff, replying to the affirmative defense, admitted signing without reading the release pleaded by plaintiff, but alleged it was lacking in effect (a) because obtained by fraudulent representations relied on by her, and (b) because of inadequacy of consideration.

To determine liability the court submitted these issues:

"1. Was the plaintiff injured as a result of the negligence of the defendant, as alleged in the complaint of the plaintiff?

"2. Did the plaintiff sign the Release referred to in the Answer and Further Defense of the Defendant?

"3. Was the signature of Mrs. Davis to the Release procured through, or as a result of, false and fraudulent representations knowingly made to her by Mr. Coyle?

"5. What amount, if any, is plaintiff entitled to recover of the defendant?"

Based on answers favorable to plaintiff, judgment was entered in her favor for $1433 and costs. Defendant appealed.

*Harvey Hamilton, Jr., for plaintiff appellee.*
*Hamilton, Hamilton & Phillips by Luther Hamilton for defendant appellant.*

RODMAN, J. Defendant, by demurrer to the reply, challenges the sufficiency of the facts alleged to invalidate the release admittedly executed. The release, by its terms, releases and discharges the defendant from all claims and demands arising out of the collision referred to in the complaint. The reply in substance alleges the insurance agent who took the release misrepresented its contents, assuring plaintiff that it related only to her medical and hospital bill, enabling her to obtain funds for the payment of these items; she was told the doctor was demanding his money; she had no means to pay and was at that time sick and suffering pain resulting from the injuries negligently inflicted. She did not read because of these facts, and could not have understood it if she had attempted to read it.

Giving the pleadings the liberal interpretation required, G.S. 1-151, *Lynn v. Clark*, 254 N.C. 460, 119 S.E. 2d 187, *Insurance Co. v. Chevrolet Co.*, 253 N.C. 243, 116 S.E. 2d 780, *Moore v. W O O W, Inc.*, 253 N.C. 1, 116 S.E. 2d 186, we are of the opinion that the reply is sufficient to withstand the demurrer.

The instrument relied on to discharge plaintiff's claim for damage is printed. It is headed: **RELEASE AND INDEMNITY AGREEMENT.** The body of the instrument is in 10-point type. Immediately over the signature of plaintiff is the warning: **READ CAREFULLY BEFORE SIGNING.** The caption and warning are here printed as appears on the release.

Plaintiff's evidence relating to the release, summarized, is: She and her husband live on Harkers Island. She finished the sixth grade in public school, but it took her eight years to do so. She has difficulty in understanding what she reads. Her husband finished the sixth or seventh grade. He also has difficulty in reading. Mr. Coyle, agent for the insurance company, came to her home, stating he wished to see defendant and inquired if that was his residence. Plaintiff answered in the affirmative, stating defendant was not then at home but working on his boat. Although Coyle was unknown to her or to defendant, she invited him in, offering to notify her husband that Coyle wished to see him. She went to defendant's place of work and returned with him. She, defendant, and the insurance agent were present when defendant, at the request of Coyle, described the collision. This was reduced to writing, read by Coyle, approved and signed by both plaintiff and defendant. Coyle then inquired as to plaintiff's physical condition and the amount of hospital and medical expenses incurred. She gave Coyle

the hospital bill for $23. The medical bill was estimated. Then, quoting plaintiff: "He (Coyle) said, 'I am going to give you $75.00 to pay for your medicine,' and he wrote the check out and kept the check in his hand. He said, 'Mrs. Davis, if you will sign this paper,' and I said, 'Yes.' He took the paper out of his brief case and folded the paper — he folded it over and said, 'Sign here,' and I signed . . . When he got to the door, he turned around and looked at me and said, 'Mrs. Davis, now you can't sue Joe.' . . . I can't read very good, very little. Mr. Coyle didn't ask me to read the paper writing that he asked me to sign, and I didn't ask him to read it. I was depending on him. My husband can't read very well either. I relied on what he told me — that the paper writing was just covering my medicine bill." She further testified that although she had never seen Mr. Coyle before he came to the house: "He said at the time that he was from the insurance company. There wasn't any question in my mind as to what he wanted to talk to us about. I was satisfied it was about the accident." She testified that her husband offered no advice or suggestion with respect to whether she should or should not sign the release. She further testified: "I had been knowing all along that I could sue Joe. I did not have in mind bringing any kind of action against him."

Coyle denied any misrepresentation with respect to the contents of the paper, asserting that the $75 was in fact paid for a complete release. Touching the execution of the document, he said: "I do not believe that Mrs. Davis actually read the whole of the paper. She had it at the chair just before she signed it — looked at it, signed it and gave it back to me. I told her what it was. She did not ask me to read it. She did not ask her husband to read it. I did nothing to keep her from reading it. I did not in any way conceal or try to conceal any of the contents of it, and I did not in any way conceal or try to conceal any of the contents of the draft for $75.00."

To obtain relief from a contract on the ground of fraud, the complaining party must show: a false factual representation known to be false or made in culpable ignorance of its truth with a fraudulent intent, which representation is both material and reasonably relied upon by the party to whom it is made, who suffers injury as a result of such reliance. *New Bern v. White*, 251 N.C. 65, 110 S.E. 2d 446; *Early v. Eley*, 243 N.C. 695, 91 S.E. 2d 919; *Parker v. Hensel*, 242 N.C. 211, 87 S.E. 2d 201; *Electric Co. v. Morrison*, 194 N.C 316, 139 S.E. 455. When we examine plaintiff's evidence to ascertain if it suffices to withstand defendant's motion to nonsuit, we reach the conclusion that it is sufficient, although admittedly the question is a close and narrow one.

The law imposes on everyone a duty to act with reasonable prudence for his own safety. So one who contracts with another cannot ignore

the contract merely because he becomes dissatisfied upon learning of the obligation assumed when, without excuse, he made no effort to ascertain the terms of the contract at the time he executed it. One who signs a written contract without reading it, when he can do so understandingly is bound thereby unless the failure to read is justified by some special circumstance. *Harris v. Bingham*, 246 N.C. 77, 97 S.E. 2d 453; *Harrison v. R.R.*, 229 N.C. 92, 47 S.E. 2d 698; *Ward v. Heath*, 222 N.C. 470, 24 S.E. 2d 5; *Presnell v. Liner*, 218 N.C. 152, 10 S.E. 2d 639; *Breece v. Oil Co.*, 211 N.C. 211, 189 S.E. 498; *Bank v. Dardine*, 207 N.C. 509, 177 S.E. 635; *Aderholt v. R.R.*, 152 N.C. 411, 67 S.E. 978.

To escape the consequences of a failure to read because of special circumstances, complainant must have acted with reasonable prudence. Did plaintiff act with reasonable prudence in relying on the representations which she says were made by Coyle? Defendant, to obtain an answer to that question, requested the court to submit as the fourth issue: "If so, in signing the Release did she act as a person of ordinary prudence would have under the same or similar circumstances?"

The court could have, by its charge on the third issue, included this as an element necessary for an affirmative answer. The charge is not in the record, but the parties stipulated: "(T)hat in the jury charge by the Court no reference was made or charge given respecting the questions that would have been raised and made the subject of jury inquiry under tendered Issue No. 4 . . ."

*Shenck, J.*, said in *McLain v. Insurance Co.*, 224 N.C. 837, 32 S.E. 2d 592: "The principle applicable to alleged fraudulent statements relied upon to vitiate an instrument, is stated in *Ward v. Heath*, 222 N.C. 470, 24 S.E. 2d 5, as follows: 'It must be a false representation of fact materially affecting the value of the contract and which is peculiarly within the knowledge of the person making it and in respect to which the other person in the exercise of proper vigilance has not an equal opportunity of ascertaining the truth.'

"The principle with which we are now concerned is also clearly stated in Cooley on Torts (Fourth Edition), at page 580, in the following words: 'Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them, and that, therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.'

"It has long been a recognized principle of law that where the parties

have equal means of information, so that with ordinary prudence and diligence, either may rely upon his own judgment, they are presumed to have done so, or, if they have not done so, they must abide the consequences." *Isley v. Brown,* 253 N.C. 791, 117 S.E. 2d 821; *Gray v. Edmonds,* 232 N.C. 681, 62 S.E. 2d 77; *Harding v. Insurance Co.,* 218 N.C. 129, 10 S.E. 2d 599; *Dorrity v. Building & Loan Asso.,* 204 N.C. 698, 169 S.E. 640; *King v. R.R.,* 157 N.C. 44, 66, 72 S.E. 801; *Dellinger v. Gillespie,* 118 N.C. 737; Restatement, Torts, sec. 541; 17 C.J.S. 515; 76 C.J.S. 647, 648. "This rule does not tend to impeach that valuable principle which commands us to treat each other as of good character, but rather enforces along with it, the salutary principle that each one must 'mind his own business' and exercise due diligence to know what he is doing." *Varser, J.,* in *Colt v. Kimball,* 190 N.C. 169, 129 S.E. 406.

Plaintiff contends that the amount paid, $75, is, when compared with fair compensation as fixed by the jury, $1433, so grossly inadequate as to invalidate the release as a matter of law. The law is otherwise. As said by *Allen, J.,* in *Knight v. Bridge Co.,* 172 N.C. 393, 398, 90 S.E. 412: "The owner of tangible property or of a claim for damages may give it away or may sell it for less than its value, and the contract is valid in the absence of fraud, undue influence, or oppression; but if the contract is attacked as fraudulent, the inadequacy of consideration is evidence of fraud, and if gross, is alone sufficient to carry the case to the jury on the issue of fraud." The rule as thus stated does not relieve one to whom an offer is made of the responsibility of, as *Varser, J.,* said, minding his own business and exercising due diligence to know what he is doing.

Pertinent to the adequacy of the amount paid is plaintiff's testimony: "I had been knowing all along that I could sue Joe. I did not have in mind bringing any kind of action against him." She could not, of course, set the release aside by a change "in mind."

New trial.

WINBORNE, C.J., not sitting.

PARKER, J., dissents.