**RICHARDSON v. WEBB**

[119 N.C. App. 782 (1995)]

—————

JAMES ANTHONY RICHARDSON AND WIFE, TERESA B. RICHARDSON, PLAINTIFFS V. VERSIE LYNCH WEBB, DON EDGAR WEBB, AND INTEGON GENERAL INSURANCE CORPORATION, DEFENDANTS

No. COA94-846

(Filed 15 August 1995)

**Torts § 34 (NCI4th)— release of insurer—action to reform release—no showing of fraud, trickery, or special circumstances**

The trial court did not err in directing verdict for defendant in plaintiffs' action to reform a release to cover property damages only based upon the alleged fraud of defendant insurance company's claim agent where the evidence tended to show that plaintiffs accepted payment for damage to their car and for rental of a vehicle after signing a release which precluded any subsequent claims, including those for personal injury, but plaintiffs presented no testimony showing any fraud or trickery by the agent or showing that they were prevented from reading or understanding the release.

**Am Jur 2d, Release §§ 14-17, 21-25, 50-53.**

Appeal by plaintiffs from order entered 23 March 1994 by Judge J. Richard Parker in Wilson County Superior Court. Heard in the Court of Appeals 8 May 1995.

On 14 April 1989, an automobile driven by defendant Versie Lynch Webb (Mrs. Webb) collided with a vehicle in which plaintiff James Anthony Richardson (Mr. Richardson) was a passenger. The automobile operated by Mrs. Webb was owned by her husband, defendant Don Edgar Webb, and insured by defendant Integon General Insurance Corporation (Integon). Plaintiff Teresa B. Richardson (Mrs. Richardson) owned the automobile in which Mr. Richardson was a passenger.

## RICHARDSON v. WEBB

[119 N.C. App. 782 (1995)]

Robert Powell, a claims agent for Integon, contacted the Richardsons and took statements from Mr. Richardson and from his step-daughter, who was driving the Richardson vehicle at the time of the collision. Because of conflicting versions of the accident, Powell originally planned to deny the Richardsons' claim. After conferring with his supervisor, Powell decided to offer the Richardsons payment for property damage to their vehicle in full settlement of the claim.

On 18 May 1989, Powell met the Richardsons at the body shop where Mrs. Richardson's car was being repaired. Powell presented a check payable to Mrs. Richardson for damage to the car, and a check payable to both Mr. and Mrs. Richardson for loss of use of the car while it was being repaired. In exchange, Powell required the Richardsons to sign a document entitled "Release Of All Claims." The release read, in pertinent part, as follows:

> [T]he undersigned . . . do/does hereby . . . release, acquit and for-ever discharge [the defendants] . . . from any and all claims of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property dam-ages and the consequences thereof resulting or to result from the accident . . . The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties . . . .

Mr. and Mrs. Richardson signed the document just below two lines which stated in all capital letters: "THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT" and "CAUTION: READ BEFORE SIGNING BELOW." Both of the Richardsons testified they did not read the release before signing.

The Richardsons first discovered they had released the defend-ants from any liability for a personal injury claim when Mr. Richardson attempted to recover damages for a back injury allegedly sustained in the accident. They filed this suit on 3 March 1992, seek-ing to reform the release to cover property damage only, and seeking recovery for personal injury damages. In their complaint, plaintiffs alleged Powell falsely represented that the release would not affect any personal injury claim they might have.

RICHARDSON v. WEBB

[119 N.C. App. 782 (1995)]

The trial court bifurcated the two causes of action, and the action to reform the release was heard before a jury on 21 March 1994. At the close of plaintiffs' evidence, the court granted defendants' motion for a directed verdict. From the order granting the directed verdict, plaintiffs appeal.

*Connor, Bunn, Rogerson & Woodard, P.A., by James F. Rogerson and C. Timothy Williford, for plaintiff-appellants.*

*Battle, Winslow, Scott & Wiley, P.A., by Samuel S. Woodley, Jr., for defendant-appellee Integon General Insurance Corporation.*

*Speight, Watson, Brewer & Stanley, by James M. Stanley, Jr., for defendant-appellees Webbs.*

McGEE, Judge.

The issue before this Court is whether plaintiffs presented sufficient evidence to overcome defendants' motion for a directed verdict. We find they did not and affirm the order of the trial court.

Plaintiffs seek to reform the release based upon the alleged fraud of Integon's claim agent, Robert Powell. In order to reform an instrument based on false and fraudulent representations one must prove: 1) a false representation; 2) the person making the statement, or persons responsible for it, knew the statement to be untrue, or had a reckless disregard for its truth or falsity; 3) the statement was intended to mislead and induce the plaintiff to act; and 4) the plaintiff did rely and act upon the statement, and suffered damages as a result. *Kemp v. Funderburk,* 224 N.C. 353, 355, 30 S.E.2d 155, 156 (1944). Plaintiffs failed to meet this burden of proof.

As stated above, the first element of fraud is a false representation. In their complaint, plaintiffs alleged Powell represented that the release only covered property damages and would not affect a personal injury claim. However, a careful review of the trial transcript shows plaintiffs presented no evidence of a false representation by Powell.

Describing the events surrounding the signing of the release, Mrs. Richardson testified as follows:

He [Powell] told us that we couldn't get the checks until we signed the paper saying this was for the car actually being fixed and for the rental car. That's all he told us. He didn't tell us any-

thing else. . . . He just told us we needed to sign the form before he could [give] us the checks for the car and the car rental.

When asked whether there had been any discussion at the body shop about a personal injury claim by Mr. Richardson, Mrs. Richardson replied: "Not to my knowledge." She also testified she was present with Mr. Richardson the entire time Powell was there. When he was asked about his meeting with Powell at the body shop, Mr. Richardson testified: "Mr. Powell asked me to sign this paper for him to get Teresa car [sic] and for Teresa for a rental car. And so I signed the paper." When asked if there had been any discussion with Powell at that time concerning his back condition or any personal injury claim, Mr. Richardson answered: "None at all." Plaintiffs presented no testimony showing Powell made any representations the release covered only property claims and that it would not affect any personal injury claim. The evidence simply shows Powell told the Richardsons they had to sign the release before they received the checks. Plaintiffs failed to prove the first element of fraud and their cause of action fails.

North Carolina courts have frequently held that if no trick or device has prevented a person from reading a paper which he has signed or accepts as the contract prepared by the other party, then the failure to read the paper when he had an opportunity to do so bars any right to reformation. *Setzer v. Insurance Co.*, 257 N.C. 396, 401, 126 S.E.2d 135, 139 (1962). Plaintiffs presented no evidence of a "trick or device" by Powell to explain their failure to read the release before signing. The only evidence tending to show a trick is Mrs. Richardson's testimony that when Powell handed her the release to sign: "[H]e had something— I think it was the check he had on top. I'm not for sure." However, Mrs. Richardson gave no testimony that this prevented her in any way from being able to read the document. If evidence does no more than raise a possibility or conjecture of fact, it is insufficient to withstand a motion for a directed verdict. *Ingold v. Light Co.*, 11 N.C. App. 253, 259, 181 S.E.2d 173, 176 (1971). Similarly, Mr. Richardson gave no testimony showing he was prevented from reading the release before signing. The Richardsons failed to produce evidence showing their failure to read the release was caused by a trick or device by Powell. Absent such evidence, their failure to read the document bars any right to reformation.

"The law imposes on everyone a duty to act with reasonable prudence for his own safety. . . . One who signs a written contract with-

**RICHARDSON v. WEBB**

[119 N.C. App. 782 (1995)]

out reading it, when he can do so understandingly is bound thereby unless the failure to read is justified by some special circumstance." *Davis v. Davis*, 256 N.C. 468, 471-72, 124 S.E.2d 130, 133 (1962). In *Davis*, plaintiff satisfied such special circumstances by showing evidence of the following: 1) the insurance agent misrepresented the contents of the release, saying it only covered her medical bills; 2) she was told the doctor was demanding his money, and she had no funds to pay him; 3) she was suffering pain and sickness from injuries sustained in the accident; and 4) because of these facts she did not read the release, and since she had only a sixth grade education and difficulty reading, she could not have understood the release if she had attempted to read it. *Davis*, 256 N.C. at 470, 124 S.E.2d at 131. In determining whether plaintiff presented sufficient evidence to withstand defendant's motion for nonsuit, our Supreme Court held she did, but that it was a "close and narrow" question. *Id.* at 471, 124 S.E.2d at 133. Evidence of special circumstances justifying a failure to read the contract was not presented in this case. Both of the Richardsons have a high school diploma or its equivalent, and both have held jobs requiring reading and writing skills. They are bound by the release.

"If the plaintiffs fail to make a prima facie showing for relief, they are not entitled to have their case sent to the jury and the trial judge may rule on the issue as a matter of law." *Hong v. George Goodyear Co.*, 63 N.C. App. 741, 742-43, 306 S.E.2d 157, 159 (1983). In this case, plaintiffs failed to present evidence showing fraud, trickery, or special circumstances. Therefore, entry of a directed verdict was proper and the order of the trial court is affirmed.

Affirmed.

Chief Judge ARNOLD and Judge LEWIS concur.