In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1921

Robert Del Raso,

Plaintiff-Appellant,

v.

United States of America,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 4542--William J. Hibbler, Judge.

Argued November 15, 2000--Decided March 20,
2001

Before Posner, Easterbrook, and Kanne,
Circuit Judges.

Kanne, Circuit Judge.  While visiting a
friend stationed at the United States
Army Post at Fort Bragg, North Carolina,
civilian Robert Del Raso fell off a horse
and allegedly injured his back. Believing
that his fall was caused by the failure
of a stable employee to tighten his
saddle, Del Raso sued the United States
under the Federal Tort Claims Act, 28
U.S.C. sec. 1346(b). The district court
granted summary judgment in favor of the
government because it found that Del Raso
released the United States of liability
for the negligence of the stable's
employee. We affirm.

The Fort Bragg Riding Stables is a
federal facility administered by Fort
Bragg that provides recreational
equestrian services for military
personnel and their families and friends.
On September 4, 1994 Del Raso and two
friends decided to go riding at the
stables while visiting a friend at the
post. As Del Raso entered the stables, an
employee behind the front counter

instructed him to wait in line and "sign the waiting list." The "waiting list" was an 8 by 14 inch document entitled "RELEASE AND HOLD HARMLESS AGREEMENT-- FORT BRAGG RIDING STABLES COMMUNITY RECREATION DIVISION FACILITY, FORT BRAGG, NC 28307-5000" with seven paragraphs of text underneath the title and a grid with columns for printed names, signatures, phone numbers, amounts paid, and other information. The first three paragraphs announced that the document was a release of liability, that a participant's signature was required to ride a horse, and that the information provided would not be shared with third parties. The remaining paragraphs stated the terms of the release, specifying that it was meant to hold the United States harmless from

any and all causes of action, including personal injury . . . arising from the use, enjoyment, and control over the said horse, saddle, and bridle, including any and all causes of action . . . arising out of the saddle or bridle becoming loose or breaking or the saddle falling from the horse or the rider being thrown from the horse by reason of the saddle becoming or being loose or the bridle breaking or the nature of the actions of the horse or the rider or any other person or animals whatsoever.

This release is intended to cover all injuries . . . of every name, type, kind or nature . . . which might be sustained or suffered from any cause whatsoever connected with or arising out of or by reason of the use of said horse, bridle, or saddle.

Del Raso and two friends, one in front and the other behind, entered the line behind 20 or so other patrons waiting to sign this document. When Del Raso reached the counter, he felt pressured to move out of the way of the persons waiting behind him, so he glanced at the document for what he described as "two seconds" and quickly printed and signed his name on the sixth line. He and his friends then waited for about one hour for the horses to arrive and their ride to begin. During that time the document remained on the counter, but Del Raso made no attempts to read it nor did he ask questions about it. When the horses arrived, an employee referred to the document to call out the names of the

next group of riders.

After his name was called, Del Raso, who has a prosthetic leg, requested assistance in mounting his horse and placing his feet in the stirrups. While employee Mark Rossignol assisted him, Del Raso stated that the saddle felt loose and asked Rossignol to tighten it. Rossignol, believing that Del Raso was simply nervous and inexperienced with horseback riding, neither checked nor secured the saddle. During the ride, however, the saddle slipped and Del Raso fell to the ground with his prosthetic leg caught in the stirrup. The horse dragged him for a short distance, and Del Raso fractured several vertebrae. He claims that he now cannot work.

Del Raso believed that his injury resulted from Rossignol's failure to properly secure the saddle and submitted a $300,000 claim to the Department of the Army. The Army Claims Service denied relief in writing in January 1998, and Del Raso timely sued the United States under the FTCA in the Northern District of Illinois./1 Following discovery, the United States moved for summary judgment on the basis that the release barred Del Raso's claim. In his response, Del Raso admitted that he signed the release and that such releases are generally valid in North Carolina. Del Raso asserted, however, that the release should not be enforced against him because the employee behind the counter fraudulently induced him to sign by referring to the release as a "waiting list" and that both he and the employee were mutually mistaken as to its contents and effect. The district court construed the release to completely bar Del Raso's claim and granted summary judgment in the government's favor.

We review de novo the district court's order granting summary judgment, drawing all reasonable inferences from the record in the light most favorable to the non-moving party. Stratmeyer v. United States, 67 F.3d 1340, 1345 (7th Cir. 1995). Summary judgment is appropriate when, after an adequate time for discovery, the non-moving party fails to establish the existence of a genuine issue of material fact for trial, Fed. R. Civ. P. 56(c), or make a showing sufficient to prove an element essential to his case on which he will bear the

burden of proof at trial, Celotex Corp.
v. Catrett, 477 U.S. 317, 322 (1986).
Because the alleged tort occurred in
North Carolina, the substantive law of
that state applies, 28 U.S.C. sec.
1346(b); FDIC v. Meyer, 510 U.S. 471, 478
(1994); Stratmeyer, 67 F.3d at 1345, and
we review de novo the district court's
determination of the content of state
law, Keller v. United States, 58 F.3d
1194, 1197 (7th Cir. 1995).

A release-and-hold-harmless agreement
based on valuable consideration is a
complete defense to personal injury
action for damages in North Carolina.
Caudill v. Chatham Manufacturing Co., 128
S.E.2d 128, 130 (N.C. 1962); Cunningham
v. Brown, 276 S.E.2d 718, 723 (N.C. Ct.
App. 1981). North Carolina courts, like
those of many other states, do not favor
contracts releasing parties from
liability for their future negligence,
but will nevertheless enforce such
clauses unless they violate a statute,
are gained through an inequality of
bargaining power, or contravene public
policy. Hall v. Sinclair Refining Co., 89
S.E.2d 396, 397 (N.C. 1955); Fortson v.
McClellan, 508 S.E.2d 549, 551 (N.C. Ct.
App. 1998); Johnson v. Dunlap, 280 S.E.2d
759, 763 (N.C. Ct. App. 1981); Andrews v.
Fitzgerald, 823 F. Supp. 356, 378
(M.D.N.C. 1993).

North Carolina courts have long required
contracting parties to act with
reasonable prudence by reading before
signing a document. See Davis v. Davis,
124 S.E.2d 130, 133 (N.C. 1962); Ward v.
Heath, 24 S.E.2d 5, 9 (N.C. 1943).
Failure to read a contract before signing
it is not grounds for rescission unless
the failure to read the contract is
justified by special circumstances. See
Caudill, 128 S.E.2d at 130; Spartan
Leasing Inc. v. Pollard, 400 S.E.2d 476,
479 (N.C. Ct. App. 1991). Special
circumstances justifying rescission
include fraudulent inducement, Richardson
v. Webb, 460 S.E.2d 343, 344 (N.C. Ct.
App. 1995), and mutual mistake of fact,
Wyatt v. Imes, 244 S.E.2d 207, 208 (N.C.
Ct. App. 1978). The party seeking to
avoid a release that he has admittedly
signed bears the burden of proving
grounds for rescission. Caudill, 128
S.E.2d at 130.

Del Raso did not dispute the general

validity of the release in the district court and does not challenge it here. Instead, he claims that whether the employee behind the stable's counter fraudulently induced him into signing the release by referring to it only as a "waiting list" and he and the employee mistakenly believed that the document was only a waiting list and not a release are genuine material issues of fact for a jury to decide. To establish fraudulent inducement under North Carolina law, Del Raso had to prove (1) stable employees falsely represented or concealed a material fact; (2) in a manner reasonably calculated to deceive him; (3) with the intent to deceive him; (4) and that he was in fact deceived; (5) to his detriment. See Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385, 391 (N.C. 1988) (citing Odom v. Little Rock & I-85 Corp., 261 S.E.2d 99, 103 (N.C. 1980)). Del Raso and his friends testified at their depositions that the employee behind the counter never once disclosed that the document was a release rather than a waiting list. This characterization, Del Raso claims, reflects the employee's intent to deceive, particularly when considered in combination with the number of persons waiting to sign, the pressure Del Raso felt to move away from the counter, and the fact that patrons were not supplied with a copy of the release. And since he is the beneficiary of all reasonable inferences as the party opposing summary judgment, he argues, he has raised a genuine issue of material fact for trial.

But even assuming that the reference to the document as a waiting list was indeed a misrepresentation--which appears not to be the case because the employees actually did use it as a waiting list--it is the only evidence in the record that Del Raso identifies as proof of the employee's fraudulent intent. North Carolina courts will not infer fraudulent intent from misrepresentation or reckless disregard for the truth alone. Myers & Chapman, 374 S.E.2d at 391; Eastern Steel Prod. Corp. v. Chestnutt, 113 S.E.2d 587, 593 (N.C. 1960); Bolton v. T.A. Loving Co., 380 S.E.2d 796, 807 (N.C. Ct. App. 1989). Moreover, Del Raso has not demonstrated that he was in fact deceived or that he reasonably relied on the misrepresentation. The document was titled "RELEASE AND HOLD HARMLESS

AGREEMENT," Del Raso had ample time after exiting the line to examine the document yet chose not to do so, and has not cited to anything in the record suggesting that the employees prevented him from reading the document. Because Del Raso could have read the release but did not, and has not identified any evidence reasonably suggesting that the employee behind the counter prevented him from reading it, he had imputed knowledge of its contents. Spartan Leasing, 400 S.E.2d 479-80. Del Raso has not suggested that he would not have signed the document if he had been told that it was a release, and therefore summary judgment was appropriate on this claim.

We likewise reject his contention that he and the stable employee were mutually mistaken that the document was a waiting list rather than a release agreement. A mutual mistake of fact is a mistake common to the parties to a contract concerning the contract's content or legal effect that, by reason of the mistake, induces each party to do what neither intended. See Creech v. Melnik, 495 S.E.2d 907, 912 (N.C. 1998); Sykes v. Keiltex Industries, Inc., 473 S.E.2d 341, 344 (N.C. Ct. App. 1996). Even if Del Raso and the stable employee were similarly mistaken as to the document's legal effect, there was no mutual mistake because the stable employee was not a party to the contract. The United States was the released party, and it knew that the document was a release. Therefore, Robert Del Raso has not met his burden of showing that a genuine issue of material fact exists for trial. The judgment of the district court is

AFFIRMED.

/1 FTCA claims may be brought in the district where either the alleged tort occurred or the plaintiff resides. 28 U.S.C. sec. 1402(b).