IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-779

No. COA22-59

Filed 6 December 2022

Mecklenburg County, No. 21 CVS 6056

LATOYA CANTEEN AND PAMELA PHILLIPS, Plaintiff-Appellees,

v.

CHARLOTTE METRO CREDIT UNION, Defendant-Appellant.

Appeal by Defendant-Appellant from Order entered 28 July 2021 by Judge George C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 October 2022.

*Cohen & Malad, LLP, by Vess A. Miller, pro hac vice, and Van Kampen Law, PC, by Josh Van Kampen, for Plaintiff-Appellee.*

*Cranfill Sumner, LLP, by Mica N. Worthy, Steven A. Bader, & Ryan D. Bolick, for Defendant-Appellant.*

DILLON, Judge.

¶ 1     Plaintiff Pamela Phillips was a deposit customer of Defendant Charlotte Metro Credit Union ("CMCU"). Plaintiff commenced this action alleging that CMCU charged her numerous overdraft and non-sufficient funds fees that were not authorized by the deposit agreement (the "Agreement"). Defendant appeals an interlocutory order denying its motion to compel arbitration. We reverse and remand.

I.     Background

In 2014, Plaintiff opened a checking account with CMCU, signing the Agreement. This Agreement provided that CMCU reserved the right to "change the terms of [the] agreement" and contemporaneously notify customers of any such modification.

From 2018 to 2020, CMCU allegedly charged Plaintiff fees not authorized by the Agreement.

In 2021, CMCU amended the Agreement to include provisions requiring any dispute thereunder to be decided through arbitration and waiving class actions (the "Amendment").

In March 2021, Plaintiff commenced this class action against CMCU seeking monetary damages, restitution, and declaratory relief in connection with CMCU's unauthorized overdraft fees. CMCU answered with a motion to stay and to compel arbitration, claiming that Plaintiff was bound by the terms of the Amendment.

The trial court entered an order denying CMCU's motion. CMCU timely appealed.

## II.    Appellate Jurisdiction

This appeal is from an interlocutory order. Interlocutory orders are generally not immediately appealable; however, an interlocutory order which affects a substantial right is immediately appealable. N.C. Gen. Stat. §§ 1-277(a), 7A-27(b)(3)(a) (2021). Our Court has held that an order *denying* arbitration affects a

substantial right and is, therefore, immediately appealable. *Gay v. Saber Healthcare Grp., L.L.C.*, 271 N.C. App. 1, 5, 842 S.E.2d 635, 638 (2020). Therefore, we have appellate jurisdiction.

## III. Analysis

Public policy favors settling disputes by means of arbitration. *Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984). *See also* N.C. Gen. Stat. § 1-569.3 (2020). "However, before a dispute can be settled [by arbitration], there must first exist a valid agreement to arbitrate." *Routh v. Snap-On Corp.*, 108 N.C. App. 268, 271, 423 S.E.2d 791, 794 (1992). In determining whether a valid agreement to arbitrate exists, we are bound by the principles of general contract law. *Southern Spindle v. Milliken & Co.*, 53 N.C. App. 785, 786, 281 S.E.2d 734, 735 (1981). There is no presumption favoring arbitration when addressing this threshold issue. *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 362, 826 S.E.2d 567, 576 (2019).

The Agreement executed by Plaintiff in 2014 contained a provision which provided the choice of law and procedure, including the appropriate forum, to resolve any disputes thereunder:

> **GOVERNING LAW** – This Agreement is governed by . . . the laws . . . and regulations of the state in which the credit union's main office is located . . . . As permitted by applicable law, you agree that any legal action regarding this Agreement shall be brought in the county in which the

credit union is located.

This signed Agreement also contained a provision allowing CMCU to change the terms of the Agreement by notifying Plaintiff of any such change:

> **Notice of Amendments.** Except as prohibited by applicable law, we may change the terms of this Agreement. We will notify you, in a manner we deem appropriate under the circumstances, of any changes in terms, rates or fees as required by law. We reserve the right to waive any terms of this Agreement. Any such waiver shall not affect our right to future enforcement.

The Agreement further provided that CMCU could provide said notice electronically.

Plaintiff assented to these provisions when she executed the Agreement in 2014.

For three consecutive months in 2021, CMCU emailed Plaintiff her statement along with a notice of "Changes to the Membership and Account Agreements." The email contained hyperlinks entitled "Information about Arbitration", "Arbitration and Class Action Waiver" and "Membership and Account Agreement Change in Terms", all under the heading "Additional Forms and Notices". The email message itself was short, with the hyperlinks following a message regarding Plaintiff's monthly account statement.

Plaintiff states that she never noticed these emails. In any event, the "Arbitration and Class Action Waiver" hyperlink led to a 2-page document which contained a provision amending the Agreement to require arbitration and a provision

allowing Plaintiff a means to opt-out of the new arbitration provision.

¶ 13 Plaintiff did not notify CMCU that she was opting out of the arbitration provision and, otherwise, continued to use her checking account.

¶ 14 These above facts are undisputed.

¶ 15 We conclude that these facts show the existence of a binding arbitration agreement. The arbitration provision was a change to the forum selection procedure contained in the original Agreement. Plaintiff agreed to be notified by email of any such change. Plaintiff, in fact, was notified on three different occasions. And Plaintiff assented to the amendment by her failure to opt-out and her continued use of her checking account. Her failure to read the provisions is no excuse. *See, e.g,, Davis v. Davis*, 256 N.C. 468, 472, 124 S.E.2d 130, 133 (1962) (holding that a party who assents to the terms of an agreement is not excused by failure to read the terms).

¶ 16 Plaintiff argues, and the trial court held, CMCU's contractual right to change the terms of the Agreement did not authorize CMCU to add provisions addressing an entirely new subject, such as arbitration. The trial court held that such addition was not contemplated and, otherwise, that CMCU was violating the covenant of good faith and fair dealing implied in every contract by adding a provision that was not in "the universe of terms included in its original [A]greement", citing *Sears Roebuck & Co. v. Avery*, 163 N.C. App. 207, 221, 593 S.E.2d 424, 434 (2004). Indeed, we held in *Sears* that no valid arbitration agreement existed based on a unilateral amendment

because the original contract "made no reference to arbitration or any other dispute resolution procedures and did not in any manner address the forum in which a customer could have disputes resolved." *Id*. at 208, 593 S.E.2d at 426 (applying Arizona law). Other courts have similarly held. *See Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 79 Cal. Rptr. 2d 273 (1998) (wherein the court denied defendant's motion to compel arbitration because "[n]one of the agreements admitted into evidence contained any provision regarding the method or forum for resolving disputes"); *Maestle v. Best Buy Co.*, 2005-Ohio-4120 (Ct. App.) ("the amendment provision referenced only changes to payments, charges, fees and interest… nowhere in the contract is there a clause addressing forums of dispute.")

¶ 17        However, the Agreement here did contain a "Governing Law" provision, which outlined the appropriate choice of law and forum for settling disputes. Plaintiff was therefore on notice that CMCU could change this provision to allow for disputes to be settled, not in the court where CMCU was located, but rather in another forum, including before an arbitrator. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum selection clause[.]")

¶ 18        Indeed, other courts have enforced an arbitration provision where a bank customer was provided notice of an amendment containing the provision. *Stiles v. Home Cable Concepts*, 994 F. Supp. 1410 (M.D. Ala. 1998) (arbitration clause added

by amendment enforceable because original agreement contained a change-of-terms provision and plaintiff received notice of the amendment, yet failed to opt out); *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819 (S.D. Miss. 2001) (arbitration clause added by amendment enforceable where defendant received proper notice which made clear his option to accept or reject the clause and the amendment was not filled with legalese); *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909 (N.D. Tex. 2000) (arbitration clause added by amendment enforceable where cardmember was given reasonable notice of the arbitration amendment and failed to respond); *Herrington v. Union Planters Bank, N.A.,* 113 F. Supp. 2d 1026, 1031 (S.D. Miss. 2000) (arbitration clause added by amendment enforceable where plaintiff agreed to a change of terms provision contained in the original deposit agreement).

¶ 19        We note Plaintiff's contention that she did not receive *adequate* notice of the amendment.  Plaintiff admits that CMCU notified her of the change three times by email, each entitled "Charlotte Metro CU Online Statement and Changes to Membership and Account Agreements are Available".  The notices were sent along with Plaintiff's monthly statements.  Information pertaining to the Amendment was contained in hyperlinks which unambiguously pertained to "arbitration" and "class action waiver".

¶ 20        Plaintiff might not have read the email notifications.  However, she agreed to be bound to amendments when notified of them by email.  And our Court has long

held that "the law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purpose of the writing, or that he has made an improvident contract, when he could inform himself and has not done so." *Weaver v. St. Joseph*, 187 N.C. App. 198, 213, 652 S.E.2d 701, 712 (2007) (citation omitted) (internal quotation marks omitted). We have enforced an arbitration agreement despite the plaintiff's argument that the agreement was unconscionable because notice was improper. *Westmoreland v. High Point Healthcare*, 218 N.C. App. 76, 721 S.E.2d 712 (2012).

¶ 21 Here, not only did CMCU's email notice include the text of the new amendment, but it also included a link to a thorough explanation in plain language. Even so, Plaintiff contends that CMCU "buried the arbitration and class action waiver provision under 'Additional Forms and Notices'" in the email. After examining the notice email in its entirety, we do not find this argument persuasive. Both the "Information about Arbitration" and "Arbitration and Class Action Waiver" links are clearly visible in the body of the email. The subject line of the email further put Plaintiff on notice of the change in terms. Plaintiff opted-in to receive electronic notifications. She does not dispute that she received all three notice emails from CMCU. Although Plaintiff may take issue with the method in which notice was provided, we conclude that the notice was sufficient.

¶ 22 We further note that Plaintiff was given the right to opt out of the provisions

in the amendment yet failed to do so. Plaintiff claims that an ambiguity in the opt-out provision made it impossible for her to decline arbitration. This provision reads:

> You have the right to opt out of this agreement to arbitrate
> if you tell us within 30 days of the opening of your account
> or the mailing of this notice, whichever is sooner.

Plaintiff argues that because she opened her account in 2014 and the notice was not sent until 2021, this provision makes it impossible for her to opt out. We agree that this provision could be construed to suggest that Plaintiff's right to opt out of the amendment expired in 2014, long before the amendment was even contemplated. But such a reading is nonsensical. As such, we construe the provision as to allow Plaintiff 30 days from the date she received notice to opt out. Yet she failed to do so in this case.

## IV. Conclusion

We reverse the trial court's order denying CMCU's motion to compel arbitration. We remand this matter, directing the trial court to stay this action pending arbitration.

REVERSED AND REMANDED.

Judge DIETZ concurs.

Judge ARROWOOD dissents by separate opinion.

ARROWOOD, Judge, dissenting.

I respectfully dissent from the majority's holding that these facts show the existence of a binding arbitration agreement and that the trial court erred in denying CMCU's motion to compel arbitration. Accordingly, I would hold the trial court's order should be affirmed because there is no valid arbitration agreement.

It is well established by this Court that before a dispute can be settled by arbitration, "there must first exist a valid agreement to arbitrate." *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 271, 423 S.E.2d 791, 794 (1992) (citations omitted). "The law of contracts governs the issue of whether there exists an agreement to arbitrate." *Id.* (citations omitted). Therefore, "a party cannot be forced to submit to arbitration of any dispute unless he has agreed to do so." *Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 478, 583 S.E.2d 325, 330 (2003), *aff'd per curiam*, 358 N.C. 146, 593 S.E.2d 583 (2004) (citation omitted). The responsibility of demonstrating a valid agreement exists is placed upon the party seeking arbitration. *Routh*, 108 N.C. App. at 271-72, 423 S.E.2d at 794.

Additionally, because arbitration agreements are governed by the principles of contracts, they are also subject to the implied covenants of good faith and fair dealing. *See Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation omitted) ("In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement."). This responsibility is even more important

when an agreement "confers on one party a discretionary power affecting the rights of the other[.]" *Mezzanotte v. Freeland*, 20 N.C. App. 11, 17, 200 S.E.2d 410, 414 (1973), *cert. denied,* 284 N.C. 616, 201 S.E.2d 689 (1974). However, a promise may be illusory where a promisor reserves "an unlimited right to determine the nature or extent of his performance[.]" *Wellington-Sears & Co. v. Dize Awning & Tent Co.*, 196 N.C. 748, 752, 147 S.E. 13, 15 (1929).

¶ 27 I agree with the trial court that CMCU had no authority to unilaterally alter the Agreement and add entirely new terms. In the present case, the Agreement between the parties, allowed the appellant to "change" certain terms and allowed them to serve those changes by electronic means. Specifically, the Agreement allowed CMCU to "change the terms of *this* Agreement[,]" and stated CMCU would notify customers of "any change in terms," but did not put customers on notice that it would add additional, uncontemplated terms. (emphasis added)

¶ 28 Therefore, in my opinion, nothing in the Agreement allowed CMCU to add new provisions to the Agreement and make those new additions apply retroactively to protect their past actions. The majority's opinion improperly interprets the Agreement to allow for this occurrence and sanctions such behavior by allowing a financial institution to protect itself from actions for which it is already being sued for in other litigation.

¶ 29        In addition even if the Agreement allowed CMCU to "add" new terms as opposed to changing current terms, which I do not believe it did, the cunning method in which CMCU attempted to do so (requiring its customers to click thru numerous links and forms to determine that it was attempting to add new terms to the Agreement), in my opinion, blatantly breached the covenants of good faith and fair dealing provisions inherent in every contract.   Furthermore, allowing CMCU unlimited authority to alter the terms of an established contract renders the contract illusory.

¶ 30        This view is consistent with the previous holdings of the Court, which the majority is required to follow under the holding set forth in *In re Civil Penalties.*  324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citations omitted) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").   Specifically, the majority's holding violates the principal that allowing one party to an agreement to unilaterally alter the terms of the agreement is antithetical to the contractual principles of mutual assent and this Court's contention that "a party cannot be forced to submit to arbitration of any dispute *unless he has agreed to do so.*" *Sloan Fin. Grp., Inc.,* 159 N.C. App. at 478, 583 S.E.2d at 330 (emphasis added).

¶ 31        Other jurisdictions have found similarly.  In *Sears Roebuck and Company v. Avery*, this Court, applying Arizona law, found that the plaintiff company could not unilaterally add an arbitration provision.  163 N.C. App. 207, 219, 593 S.E.2d 424, 432 (2004).  In *Sears Roebuck*, the plaintiff company's original contract with defendant did not contain an arbitration clause, but they later amended the agreement to change the terms.  *Id.* at 212, 593 S.E.2d at 428.

¶ 32        However, this Court reasoned that allowing Sears to "unilaterally insert" a "wholly new term" would "ignore the requirement of good faith implied in all contracts of adhesion[,]" be contrary to "black letter contract law[,]" and "render the contract illusory."  *Id.* at 218-19, 593 S.E.2d at 432.  Other courts have found similarly.  *Id.* at 219, 593 S.E.2d at 432-33 (citing *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 783, 79 Cal. Rptr. 2d 273, 275 (1998); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), *cert. denied*, 540 U.S. 1160, 157 L. Ed. 2d 1204 (2004); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 316 (6th Cir. 2000), *cert. denied*, 531 U.S. 1072, 148 L. Ed. 2d 664 (2001)).

¶ 33        Because I believe that the majority's view is violative of previous precedent of this Court and of the black letter principals of contract law I dissent.  I would find there to be no mutual assent and thus no binding arbitration agreement and I would

conclude the trial court was correct in denying CMCU's motion to compel arbitration.

For the foregoing reasons, I would affirm the trial court's order and I dissent.