DRAEGER v. KENT COUNTY SAVINGS ASS'N.

1. FRAUD—CONTRACTS—WRITTEN CONTRACT—FAILURE TO READ — FALSE STATEMENTS AS TO CONTENTS.

Where a husband and wife, who bought shares in a building and loan association without reading the written contract, had ample opportunity to read it, and no artifice or fraudulent means was used to induce them to sign or to prevent their reading it before signing, an action for fraud may not be maintained on the alleged fraudulent statements of defendant's agent, who sold them the stock, and who is alleged to have misrepresented the contents of the contract.

2. CONTRACTS—DUTY TO READ WRITTEN CONTRACT—WRITTEN CONTRACT MAY NOT BE REPUDIATED FOR FAILURE TO READ.

It is the duty of a party to a written contract to read it before signing, and where he fails to do so he may not repudiate it on the ground that he relied on the statements of the other party who misrepresented its contents.

WIEST and CLARK, JJ., dissenting.

¹Fraud, 26 C. J. § 68; ²Contracts, 13 C. J. § 301; 37 L. R. A. 598; 6 R. C. L. 633; 2 R. C. L. Supp. 170; 6 R. C L. Supp. 401.

Error to superior court of Grand Rapids; Verdier (Leonard D.), J.    Submitted October 12, 1927. (Docket No. 88.)    Resubmitted March 27, 1928.    Decided June 4, 1928.

Case by Emil Draeger and another against the Kent County Savings Association for fraud in the sale of corporate stock.    Judgment for plaintiffs.    Defendant brings error.    Reversed.

*Wykes & Sherk,* for appellant.

*Charles E. Misner,* for appellees.

CLARK, J. (*dissenting*).    Plaintiff Emil Draeger, a mechanic residing in Grand Haven, and his wife, signed a subscription for 50 shares of defendant's capital stock at $100 per share, to be paid in installments of not less than 50 cents per share per month, and, quoting:

"I agree to pay with this subscription a premium of three ($3) dollars per share to establish a reserve fund and defray the expenses of reorganization, extension, equipment and obtaining subscriptions to the stock of the association."

After they had paid $150 they claim to have discovered that they had been defrauded, and this suit to recover the sum paid was instituted.    The substance in chief of the averred fraud is thus stated by Mr. Draeger:

"He said that you could get your money back at any time, any time you wanted it, and he said we would guarantee you seven per cent. interest and possibly more if the company made it.    He said that the shares were $3 a share.    And he said we wouldn't need to pay more than $3 a share, nor anything more."

Mrs. Draeger testified to the same effect.    They also testified that they did not understand the paper and relied on what was said to them by Mr. Pringle, the

stock salesman, who contradicts them squarely.    Other persons of the locality testified of like misrepresentations made to them by the salesman about that time to induce them to subscribe.    Plaintiffs had verdict and judgment.    Defendant brings error.

Under the following decisions we think plaintiffs made a case for the jury:    *Schupp* v. *Davey Tree Expert Co.*, 235 Mich. 268; *J. B. Colt Co.* v. *Cousino*, 226 Mich. 518; *Plate* v. *Surety Co.*, 229 Mich. 482.

The last case cited also answers the contention that plaintiffs were permitted, by their testimony of misrepresentation, to vary the terms of the contract.    The testimony of the other persons of like misrepresentations made to them, as stated, was admissible to show a scheme or intent to defraud.    *Jordan* v. *Miller*, 232 Mich. 8; *Stowe* v. *Mather*, 234 Mich. 385.

Judgment should be affirmed.

WIEST, J., concurred with CLARK, J.

McDONALD, J.    This judgment should be reversed. The plaintiffs are husband and wife.    The wife did not sign the contract.    Her husband testified:

"I signed for myself and my wife.    While it says that it is an application for installment shares at the top I did not see it, and when I signed this application to buy some shares of stock, and that was put there before me to sign, I did not read it and I do not think my wife read it.    I am not in the habit of signing papers and agreements to purchase stocks although I have sometimes signed an agreement to purchase something that I didn't see with a good reliable firm. * * * I have bought other stock in Chicago but I have never bought building and loan stock. * * * I have testified that I hadn't read this application and I did not.    I signed it because I thought the firm was honest, and Pringle (agent) was honest, so I didn't take the trouble of looking it over and reading it.    At the time that I signed it Pringle told me that it was $3 a share, and I could pay it off in installments.

There was nothing said about that being contained in an instrument."

The rule applicable to the facts in this case is well stated in *McCormack* v. *Molburg,* 43 Iowa, 561. There the defendant claimed to have been induced to enter into a written contract because of fraudulent representations of plaintiff's agent. In disposing of this claim the court said:

"The defendant does not state that plaintiffs used any artifice to prevent him from reading the contract, nor does he state that he was unacquainted with the English language, or that he could not read. In fact no excuse whatever is given, except that he signed the contract relying on the representations of the plaintiffs as to its contents. This is inexcusable neglect, and the defendant must suffer the consequences of his own folly. The effect of such a rule as that claimed by appellant would be to render written contracts of but little practical value over those existing in parol only."

In *Gardner* v. *Johnson,* 236 Mich. 258, there was involved a claim of fraud in the sale of foxes. The plaintiff claimed that she sold four foxes but the written contract called for six. It was there said:

"She was possessed of her faculties. She could read, might have done so, but did not read before signing, nor were the papers read to her. There is no testimony of procuring her signatures by trick or artifice, no testimony of any act of fraud. Plaintiff says simply, 'I sold but four foxes,' and from this it is argued that, as the papers call for six foxes, an issue of fraud is made. If that be the rule, where is the advantage of putting agreements in writing?"

In the instant case, the testimony shows that the plaintiff Emil Draeger was an intelligent man. He could read and write and had some experience in the purchase of stocks. No artifice, no means fraudulent or otherwise were used to prevent him from reading the contract, which was simple and understandable

to a man of ordinary intelligence.    He chose to sign it without reading.    If he had read it, he would have been informed that any statement made by the agent and not contained in the writing was not binding on the association.    If he had read it, he would have been informed that it was not the same as the oral contract which he had made with the agent.    It was his duty to read it before signing, not alone for his own protection but as well for the defendant association.

An examination of the authorities will show that courts have gone far to protect ignorant and illiterate persons who have been induced to sign contracts for the purchase of worthless stocks.    But in this case, as far as appears by the record, the plaintiffs made a good .investment in shares of a building and loan association that is financially sound and in a prosperous condition.    There seems to be no reason why this court should assume to act as guardian for them in this transaction.    To allow persons of intelligence and mature age to repudiate their written contracts which they have an opportunity to read before signing and can read would lend uncertainty to business transactions and render the making of contracts unsafe.

The judgment is reversed, with costs to the defendant.

FEAD, C. J., and NORTH, FELLOWS, POTTER, and SHARPE, JJ., concurred with MCDONALD, J.