Zimmerman, J.
 

 All dealings in respect to the deposit of the $3,000 in question were with the then president of the company and reliance was placed solely on his representations. For the purposes of this discussion we shall assume he agreed to take the money for the company as an interest-bearing savings account. Did he possess such authority and was the company bound thereby?
 

 A generally accepted rule of law is thus stated by the Court of Errors and Appeals of New Jersey, in the syllabus of
 
 Myrtle Avenue Corp.
 
 v.
 
 Mt. Prospect Building & Loan Assn.,
 
 112 N. J. L., 60, 169 A., 707:
 

 “A corporation is bound by the act of its president only to the extent that the power to do the act has been conferred upon him expressly by the charter, bylaws or corporate action of its stockholders or board of directors, or can be implied from the powers expressly conferred, or which are incidental thereto, or where the act is within the apparent powers which the corporation has caused those with whom the president has dealt to believe it has conferred upon him.”
 

 Of similar effect is the second proposition of the syllabus of
 
 Bradford Belting Co.
 
 v.
 
 Gibson,
 
 68 Ohio St., 442, 67 N. E., 888, where it is said:
 

 “In the absence of express authority conferred upon its officers or agents, and of such a course of
 
 *565
 
 dealing with the world as clearly implies authority to do the controverted act, a corporation can be bound only by its board of directors.”
 

 The third proposition of the syllabus in the last cited case contains the significant remark that “An agent cannot enlarge his own authority by an unauthorized representation as to its extent.”
 

 With the above statements in mind, let us turn to an examination of the record in the present case. As already noted, the constitution and by-laws of the company, introduced in evidence as an exhibit, made provision exclusively for the subscription to, and ownership of, its shares of capital stock. No other part of the constitution and by-laws expressly or by implication vested power in the president or any other officer to alter or change such rule in any way. The representatives of the trustee were put upon notice that the president did not possess such power, for they testified that on an occasion prior to the date of ithe deposit he imparted the information that the matter would have to be referred to the board of directors for approval.
 

 There is no evidence that the company ever accepted a savings account during the entire time it was engaged in business, or that anything of that sort had ever before been attempted by any of its officers. In fact, the only evidence on the subject is to the contrary.
 

 Continuing our initial assumption, we have here, therefore, an isolated case of the president of a company making an agreement wholly unauthorized by its constitution and by-laws, its stockholders or its board of directors; an agreement not within his incidental or apparent powers; an agreement entirely outside the usual business of the company; and there is no direct evidence that such agreement was known to or ratified by the stockholders or board of directors.
 

 So far as the company was concerned, an ordinary stock transaction was involved. Without desire to be
 
 *566
 
 too repetitious, we again note that the receipt of the $3,000 was listed on a “Running Stock Deposit Slip” and the company’s records showed a “Stock deposit.” The trustee signed the usual “Signature Card” subscribing for shares of the company’s capital stock, subject to its constitution and by-laws. She was issued the usual passbook disclosing a stock account. She was credited with semi-annual “dividends” which were entered on the passbook and so characterized over a period of four years. There is nothing to show any objection or protest to the credit of such dividends.
 

 Ordinarily, one of full age in the possession of his faculties and able to read and write, who signs an instrument and remains acquiescent to its operative effect for some time, may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance. Or as Judge Davis remarks in
 
 McAdams
 
 v.
 
 McAdams,
 
 80 Ohio St., 232, 240, 88 N. E., 542, 544: “A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was- different from what he intended, when he could have known the truth by merely looking when he signed.”
 

 Under the circumstances of this case, the answer to the original question must be that the president of the company was totally lacking in authority or power to make the agreement charged to him, and consequently it was without effect on the company. As to the company, defendant in error was a stockholder who must be so treated in this controversy., The following cases lend support to the result reached:
 
 Provan
 
 v.
 
 Bondeson,
 
 157 Minn., 478, 196 N. W., 659;
 
 Draeger
 
 v.
 
 Kent County Savings Assn.,
 
 242 Mich., 486, 219 N. W., 637;
 
 Dorrity
 
 v.
 
 Greater Durham Building & Loan Assn.,
 
 204 N. C., 698, 169 S. E., 640;
 
 Gary Hobart Savings & Loan Assn.
 
 v.
 
 Strong,
 
 99 Ind. App., 422, 190 N, E., 373.
 

 
 *567
 
 It is to be remembered that the trust relationship existing between a trustee and his
 
 cestui que trust,
 
 established by a 'written agreement or otherwise, is not
 
 ipso facto
 
 carried over to create the same relationship between the trustee and a financial institution in which funds of the trust are placed. Proposition two of the syllabus in
 
 Squire, Supt. of Banks,
 
 v.
 
 Oxenreiter, ante,
 
 475.
 

 Counsel for defendant in error has cited a number of authorities which are not in point, because they relate either to
 
 ultra vires
 
 acts of corporations themselves, or to the acts of officers and agents of corporations performed within their express, implied or apparent powers.
 

 The ultimate conclusion is that the Court of Common Pleas and the Court of Appeals were wrong in ordering priority of payment to defendant in error over other stockholders of the defunct company.
 

 The judgment of the Court of Appeals is accordingly reversed and judgment is entered for plaintiff in error.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias and Day, JJ., concur.