**ALTON, Trustee, Appellant,**

v.

**WYLAND et al., Appellees.**

[Cite as *Alton v. Wyland* (1991), 72 Ohio App.3d 685.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–464.

Decided Feb. 26, 1991.

*Lane, Alton & Horst* and *John M. Alton,* for appellant.

*Emens, Hurd, Kegler & Ritter, Thomas W. Hill* and *Jason M. Dolin,* for appellees.

WHITESIDE, Judge.

Plaintiff, Jack R. Alton, Trustee, appeals from a judgment of the Franklin County Court of Common Pleas and raises three assignments of error as follows:

"I. There is a genuine issue of material fact regarding whether Wyland was negligent in failing to disclose to Alton the nature and extent of risks associated with the Marietta Partners investment and/or in specifically advising Alton that there was no risk associated with such investment.

"II. There is a genuine issue of material fact regarding whether Jack Alton was contributorily negligent and/or assumed the risk in signing his name on a piece of paper without reading it, after having been advised by Wyland that there was no risk associated with the investment and after paying and relying on Wyland to read such documents and to advise him of the pertinent portions thereof, including risks of the investment.

"III. The statute of limitations has not run on Alton's HMB–80 claim."

Plaintiff brought this action against defendants James H. Wyland and Paul Breen, who were employees of Professional Planning Consultants, a financial planning firm. Plaintiff alleges that defendants were negligent in failing to disclose to him the nature and extent of the risks associated with two investments he was induced to make: (1) an oil and gas tax shelter investment, HMB–80, Ltd., and (2) a real estate investment company, Marietta Partners, Ltd. The claim with respect to HMB–80 was directed only against defendant Breen. Defendants filed a motion for summary judgment, which was sustained by the trial court.

The trial court found the claim with respect to HMB–80 to be barred by the applicable statute of limitations, namely, the four-year limitation of R.C. 2305.09(D). The trial court found that the statute began to run at the earliest in late 1980 and at the latest in February 1982 when plaintiff discovered that the investment was not a good investment. The complaint herein was filed in November 1988.

With respect to Marietta Partners, the trial court found that plaintiff has no justiciable claim to relief because of an affidavit he signed in connection with the making of the Marietta Partners investment, which affidavit states in part:

" * * * [I]t has been called to the undersigned's attention in connection with the purchase of Debt interests that such investment is speculative in nature and involves a high degree of risk * * *."

When this was called to plaintiff's attention in his deposition, he stated to the effect that he had not read the multi-page affidavit agreement but, instead, had relied upon the advice of defendants as to the nature of the investment, including the degree of risk, and expected them to advise him with respect to the investments and the contents of the papers that he signed with respect thereto.

The first two assignments of error are interrelated, both relating to the Marietta Partners investment. By the first assignment of error, plaintiff contends that there is a genuine issue of fact as to whether defendant Wyland was negligent with respect to disclosure to Alton as to the nature and extent of risks associated with the Marietta Partners investment. Since this is a summary judgment case, the evidence must be construed most strongly in favor of plaintiff. There is evidence that Wyland specifically advised plaintiff that there was little risk associated with the Marietta Partners investment. Later, on cross-examination, plaintiff qualified his answer slightly to indicate that defendants said that the investment was a good investment and did not mention any risk. Construed most strongly in favor of plaintiff, the evidence does indicate a genuine issue of fact as to whether defendants were negligent in their advice to plaintiff, which led him to make the investment. However, even though there be a question of fact to this extent, the question remains as to whether such issue of fact is material to the outcome. This is the issue raised by the second assignment of error.

In addition to the affidavit agreement signed by plaintiff, defendants point to a copy of the Marietta Partners private placement memorandum, which also indicated the offering involved a high degree of risk. This memorandum was given to plaintiff prior to his investment, but he did not read it, instead relying upon advice of defendants. Standing alone, the memorandum which plaintiff did not read would not preclude a claim against defendants who were acting as investment advisors to plaintiff and on whose expertise he was entitled to rely without the necessity of reading the memorandum describing the investment. Were this an action between plaintiff and Marietta Partners, plaintiff might well have been required to have read the offering memorandum. However, plaintiff seeks relief from his own investment advisors for allegedly

negligent advice given to him by them. There is no evidence that defendants, as investment advisors, specifically told plaintiff that he could not rely upon their advice and, instead, should read the offering memorandum prepared by Marietta Partners.

The second document relied upon by defendants is the affidavit agreement signed by plaintiff in which he specifically states that he has been advised that the investment is speculative and involves a high degree of risk. The issue is whether, as between plaintiff and his investment advisors, plaintiff was entitled to rely upon their advice, rather than reading the affidavit agreement, which he executed under oath.

In support of their contention that plaintiff is "bound" by the affidavit agreement which he executed, defendants rely upon cases involving the issue of whether a party to a contract is bound thereby, even though he did not read it, where its contents differ from his understanding of the agreement. The trial court also relied upon this principle, citing particularly *Kroeger v. Brody* (1936), 130 Ohio St. 559, 5 O.O. 210, 200 N.E. 836, and *McAdams v. McAdams* (1909), 80 Ohio St. 232, 88 N.E. 542. While those, and other cases cited by plaintiff, correctly state the law that one is bound by the provisions of a contract (including releases) which he has signed, they do not directly apply here. First, the affidavit agreement was not between plaintiff and defendants. Rather, it was a subscription agreement with Marietta Partners. Plaintiff makes no claim against Marietta Partners, and, if he were to, the principles relied upon by defendants and the trial court would be directly applicable and controlling since plaintiff is bound by the provisions of the contract with the other party thereto, namely, Marietta Partners. Here, however, plaintiff does not seek to avoid the contract but, instead, seeks recovery for having received incorrect advice negligently given to him by defendants which led him to sign the affidavit agreement with Marietta Partners without reading it first.

At the outset, we find that one who holds himself out to be an investment advisor and for a fee gives investment advice to another is liable to such other person if he negligently gives inaccurate advice causing damage to the other person as a result of relying upon such investment advice. Defendants do not argue to the contrary, although the gist of part of their argument might lead to the conclusion that investment advisors are not liable for giving negligent advice if the person advised could ascertain the information by other means. In making this determination, we note that not a stockbroker but, instead, an investment advisor is involved. Although a stockbroker may also operate as an investment advisor, such a relationship

must be created before there is any duty upon the stockbroker to make disclosures with respect to the soundness of an investment which he suggests.

Nevertheless, even though an investment advisor may have a duty to advise a client of risks inherent in the acquisition of an investment which the advisor rates as "good," the investment advisor is not an insurer of the soundness of the investment. Although, as we held above, merely giving a complicated prospectus to a potential investor may not fulfill the obligation of the investment advisor who recommends a specific investment as "good," it is not unreasonable for an investment advisor to assume that the client has read a paper which he signs and has notarized. As between plaintiff and Marietta Partners, there was an obligation on the part of plaintiff to read the affidavit agreement that he signed, and he is bound by the provisions thereof and the representations made therein, even though he did not read the paper before he signed it. Likewise, the investment advisors, defendants in this instance, are entitled to assume that plaintiff read such document before he signed it. Thus, defendants would be justified in believing that plaintiff was aware of the speculative nature of the investment and the high risk involved, or, at the very least, that he would have inquired of them if he did not understand.

The duty of defendants as investment advisors was, at most, to advise plaintiff of the risk inherent in the investment since there is no indication that plaintiff was advised by defendants that he should rely upon the printed document, rather than the oral assurances of defendants. However, the advice as to the risk need not be oral but may be written and may be presumed under circumstances where it naturally follows that such disclosure is imparted. In the absence of an indication that defendants knew that plaintiff had not read the affidavit subscription agreement before signing it, defendants as investment advisors are not negligent for failing to advise plaintiff to read the affidavit subscription agreement before signing it. Rather, they were entitled to assume that plaintiff would read the document and understand it, especially under the circumstances herein. In other words, defendants fulfilled their duty to advise plaintiff that the investment was speculative and the risks great by having him execute the affidavit subscription agreement in which he acknowledged his awareness. Defendants were entitled to assume that plaintiff would read such a document before signing it and were under no obligation to advise plaintiff to do so. Accordingly, even construing the evidence most strongly in favor of plaintiff, the evidence indicates that defendants, as investment advisors, did fulfill their duty to give plaintiff the appropriate information as to the risk inherent in the investment. For this reason, the first and second assignments of error are not well taken.

By the third assignment of error, plaintiff contends that the trial court erred in finding the claim with respect to the investment in HMB–80 to be barred by R.C. 2305.09(D). There is no question but that plaintiff commenced his action with respect to his investment in HMB–80 more than four years after he sustained the loss and even more than four years after discovery of the loss. As defendants point out, *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, specifically held that the discovery rule does not apply to negligence claims under R.C. 2305.09(D). Plaintiff relies upon *Frysinger v. Leech* (1987), 32 Ohio St.3d 38, 512 N.E.2d 337, and contends that the commencement of the running of the statute of limitations necessarily was delayed until he terminated his relationship with defendants in 1987.

 The rule in *Frysinger,* however, that a medical malpractice claim commences to run when the physician-patient relationship terminates is an adjunct of the discovery rule and applies only in the event that the relationship terminates subsequent to discovery of the medical malpractice. In a medical malpractice situation, the doctor-patient relationship may continue while the doctor attempts to alleviate the effects of his own negligence. No such natural continuation of the relationship exists with respect to an investment advisor. Once the loss has occurred, resulting from the negligent advice of an investment advisor, continuation of the relationship with the investment advisor is not with respect to that investment. Rather, the relationship between plaintiff and defendants with respect to the HMB–80 investment terminated at or about the time of plaintiff's loss. Their continued relationship was with respect to other investments, not that investment.

The syllabus of *Frysinger* expressly states that the statute commences to run "when the physician-patient relationship *for that condition* terminates" unless the resulting injury is later discovered. (Emphasis added.) *Frysinger* does not hold that mere continuation of a physician-patient relationship with respect to conditions other than the one related to the alleged malpractice stays the commencement of the running of the statute of limitations. Even if *Frysinger* were applicable under the circumstances herein, the result would be the same, namely, that plaintiff's claim with respect to the HMB–80 investment is barred by R.C. 2905.09(D) since the entire four-year limitation period ran before this action was commenced. The third assignment of error is not well taken.

For the foregoing reasons, all three assignment of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

McCORMAC and BOWMAN, JJ., concur.