[Cite as *Manifold & Phalor, Inc. v. Konecranes, Inc.*, 2020-Ohio-7009.]

THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Manifold & Phalor, Inc., | : | |
| Plaintiff-Appellant, | : | No. 19AP-737 |
| v. | : | (C.P.C. No. 19CV-2936) |
| Konecranes, Inc., et al., | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 31, 2020

**On brief:** *Porter, Wright, Morris & Arthur LLP, Allen T. Carter,* and *Elizabeth Moyo,* for appellant. **Argued:** *Elizabeth Moyo.*

**On brief:** *Mazanec, Raskin & Ryder, Co., L.P.A., Paul-Michael La Fayette* and *Cara M. Wright,* for appellee, Konecranes, Inc. **Argued:** *Paul-Michael La Fayette.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Manifold & Phalor, Inc. ("M&P"), appeals from a judgment of the Franklin County Court of Common Pleas entered on September 25, 2019 granting the motion to dismiss of defendant-appellee, Konecranes, Inc. ("Konecranes"), for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). For the following reasons, this Court reverses the decision of the trial court and remands this matter for trial on the issue on compensatory damages.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This is a refiled action concerning a commercial transaction in which M&P purchased from Konecranes two 10-ton cranes and remote control upgrades for each crane in 2013. M&P alleges that, on October 4, 2013, one of the cranes and its upgrade

malfunctioned, resulting in injury to an M&P employee.[1] M&P first filed this action in 2016 and then voluntarily dismissed, Franklin C.P. No. 16CV-2032. On April 9, 2019, M&P refiled this action seeking to recover damages under claims for breach of warranty, breach of contract, conversion, and spoliation. On May 1, 2019, M&P filed its Amended Complaint, dropping the conversion and spoliation claims. M&P attached several exhibits to its Amended Complaint. M&P provided Exhibit "A" as "[t]he entire agreement" concerning its purchase of the cranes and remote control upgrades from Konecranes. (Am. Compl. at ¶ 5.) Exhibit A consists of the purchase order, correspondence concerning the purchase, commercial terms, Konecranes' Standard Terms and Conditions of Sale, and invoices and receipts.

{¶ 3} M&P filed the underlying action to recoup damages it alleges it sustained, and continues to sustain, as a result of Konecranes' alleged breach of express and implied warranties and breach of contract. M&P alleges that Konecranes' breaches directly and proximately caused M&P damage, "including but not limited to lost employee hours, lost productivity and efficiency, Workers' Compensation payments, an increase in Workers' Compensation premiums, an increase in other insurance premium costs, other related business expenses, costs and losses, attorneys' fees, and experts' fees and costs." (Am. Compl. at ¶ 15.)

{¶ 4} On May 29, 2019, Konecranes moved to dismiss the Amended Complaint under Civ.R. 12(B)(6) and 12(F). Konecranes' memorandum in support of its motion stated in pertinent part:

> M&P's Amended Complaint seeks to recover consequential damages exclusively, but the Agreement, attached to its Amended Complaint and upon which M&P bases its claims, ***expressly prohibits*** M&P from recovering any consequential damages whether arising in contract (which includes breach of warranty), tort, product liability or otherwise. Thus, the Amended Complaint fails to state a claim upon which relief can be granted. Even if the damages M&P seeks are not merely consequential damages, the Agreement expressly limits Konecranes's liability to the total price paid by M&P for the goods. If the Court does not dismiss the Amended

---

[1] The parties disagree as to the cause of the injury of M&P's employee that initiated the filing of the lawsuit. M&P alleges its employee was operating the crane and using one of the remote control upgrades, and the employee was injured when the Konecranes equipment malfunctioned. M&P further alleges that Konecranes' representative(s) replicated the malfunction. Konecranes asserts the injury was caused by operator error.

> Complaint in its entirety, the Court should dismiss and strike claims and allegations from the Amended Complaint that seek consequential damages or damages in excess of the total price paid.
>
> Moreover, M&P has not and cannot state a claim for breach of implied warranties. The Agreement disclaims implied warranties, including the implied warranties of merchantability and fitness for a particular purpose that M&P has asserted against Konecranes. Because M&P waived its implied warranty claims under the Agreement, the Court should dismiss those claims.

(Emphasis sic.) (May 29, 2019 Def.'s Motion to Dismiss, Memo. in Support at 1.)

{¶ 5} On June 24, 2019, M&P filed a memorandum contra Konecranes' motion to dismiss, to which Konecranes filed its response on July 8, 2019.

{¶ 6} On September 25, 2019, the trial court entered judgment granting Konecranes' motion to dismiss. The trial court found that M&P's Amended Complaint failed to state a claim upon which relief could be granted because it sought relief not provided for in the contract. The trial court agreed with Konecranes that the damages M&P sought were "consequential damages" for which recovery was barred by the terms of the agreement. The trial court rejected M&P's arguments that (1) the sales contract with Konecranes, which formed the basis for the underlying action, was invalid, (2) the contract's limitation of liability provision was unenforceable because it was unconscionable, and (3) the limitation of liability in unenforceable due to Konecranes' fraud. (Sept. 25, 2019 Jgmt. Entry at 5-6.) Accordingly, the trial court held that "it appears beyond doubt that M&P can prove no set of facts showing it is entitled to the Consequential damages under the contract. Therefore, Konecranes' motion to dismiss is granted without prejudice." *Id.* at 7.

{¶ 7} M&P now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 8} M&P presents for the Court's review a sole assignment of error.

> The trial court erred in granting [Konecrane's] Motion to Dismiss (Decision and Entry Granting [Konecrane's] Motion to Dismiss Filed May 29, 2019).

## III.  LEGAL ANALYSIS

### A.  Standard of Review

{¶ 9}   This Court reviews de novo the trial court's decision to dismiss appellant's complaint for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6). (Additional citations omitted.) *State ex rel. CannAscend Ohio LLC v. Williams*, 10th Dist. No. 18AP-820, 2020-Ohio-359, ¶ 23, citing *Rooney v. Ohio State Hwy. Patrol*, 10th Dist. No. 16AP-204, 2017-Ohio-1123, ¶ 13.

{¶ 10}   A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim is procedural and tests the sufficiency of a complaint.  *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992); *Powell v. Vorys, Sater, Seymour and Pease*, 131 Ohio App.3d 681, 684 (10th Dist.1998).  In considering a Civ.R. 12(B)(6) motion to dismiss, a trial court "may consider only statements and facts contained in the pleadings, and may not consider or rely on evidence outside the complaint." *Stainbrook v. Ohio Secy. of State*, 10th Dist. No. 16AP-314, 2017-Ohio-1526, ¶ 11, quoting *Powell* at 684; *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997).  The trial court must limit its consideration to the four corners of the complaint and may dismiss the case only if it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling the plaintiff to recover.  *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus; *Ritchie v. Ohio Adult Parole Auth.*, 10th Dist. No. 05AP-1019, 2006-Ohio-1210, ¶ 16, citing *Singleton v. Adjutant Gen. of Ohio*, 10th Dist. No. 02AP-971, 2003-Ohio-1838, ¶ 18.  Documents attached to or incorporated into the complaint may be considered on a motion to dismiss pursuant to Civ.R. 12(B)(6).  *Cline v. Mtge. Electronic Registration Sys.*, 10th Dist. No. 13AP-240, 2013-Ohio-5706, ¶ 17.  A trial court must presume that all factual allegations in the complaint are true and must draw all reasonable inferences in favor of the nonmoving party.  *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1998).  Unsupported legal conclusions in the complaint do not enjoy this presumption, however, and are not sufficient to withstand a motion to dismiss.  *Mitchell* at 192-93; *Rudd v. Ohio State Hwy. Patrol,* 10th Dist. No. 15AP-869, 2016-Ohio-8263, ¶ 12.

### B.  Discussion

{¶ 11}   M&P asserts on appeal three arguments to demonstrate that the trial court erred in granting Konecranes' motion to dismiss. First, M&P argues that its Amended Complaint "sufficiently alleges breach of contract and breach of warranty with compensable

damages." (M&P Corrected Brief at 4.) Second, M&P argues that no valid contract existed between the parties because there was no meeting of the minds. *Id.* at 7. Third, it argues that the contract's limitation on liability clause "cannot be enforced because Konecranes engaged in willful and wanton conduct, the clause violates public policy and the clause is unconscionable and should not be enforced." *Id.* at 10.

{¶ 12} Konecranes counters that M&P has no path to recovery because M&P seeks only consequential damages that are precluded by the sales contract's enforceable limitation of liability provision. Konecranes argues that this Court should affirm the trial court's decision.

{¶ 13} This Court addresses M&P's three arguments individually.

1. **M&P argues its First Amended Complaint sufficiently alleges breach of contract and breach of warranty with compensable damages.**

{¶ 14} The purchase agreement between M&P and Konecranes constitutes the contract in this matter. The following facts are contained in the Amended Complaint and in the contract (Exhibit A) attached thereto:

> 1. M&P is a domestic corporation engaged in the business of design, welding, fabrication, machining, and repair services with its primary place of business in Canal Winchester, Ohio. (Am. Compl. at ¶ 1.)
>
> 2. Konecranes is a foreign corporation engaged in the business of providing lifting equipment and services, with its primary place of business in Springfield, Ohio. *Id.* at ¶ 2.
>
> 3. M&P purchased two 10-ton cranes from Konecranes. *Id.* at ¶ 3. The parties entered into a purchase agreement. *Id.* The contract is attached to the Amended Complaint as Exhibit A.
>
> 4. M&P also purchased remote control upgrades for the cranes for each crane. *Id.* at ¶ 6. Those were included in the purchase contract. *Id.*
>
> 5. In October 2013, an M&P employee was injured while operating one of the cranes and using a remote control upgrade. *Id.* at ¶ 8.
>
> 6. M&P notified Konecranes of the accident, and Konecranes immediately sent a representative to inspect the crane and remote. *Id.* at ¶ 11.

7. The Konecranes representative removed the remote control from M&P's premises on or about the date of the accident. *Id.* at ¶ 13.

8. M&P requested Konecranes to return the remote control to M&P or reimburse it for the cost, but Konecranes refused to do so unless M&P first signed a General Release of All Claims and Covenant Not to Sue. *Id.* at ¶ 16-17, Ex. A.

9. M&P filed the underlying action seeking relief for breach of express and implied warranties and breach of contract. *Id.* at ¶ 20-33, 34-40.

10. M&P alleged direct and consequential damages arising from the accident. *Id.* at ¶ 15.

{¶ 15} Two of the relevant sections of the contract are the warranties section and the limitation of damages section. The warranties section provides that M&P's purchase was "subject to Konecranes Standard Warranty." (Ex. A at ¶ 8, attached to Am. Compl.) The standard warranty is set forth conspicuously in a separate paragraph, in all capital letters and bold font. It states:

> **THE KONECRANES STANDARD WARRANTY REPRESENTS THE SOLE AND EXCLUSIVE WARRANTY GIVEN BY KONECRANES TO BUYER WITH RESPECT TO GOODS AND/OR SERVICES PROVIDED UNDER THE QUOTATION AND IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ARISING BY OPERATION OF LAW OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

(Emphasis sic.) *Id.*

{¶ 16} The limitation of damages section also is set forth conspicuously in a separate paragraph, in all capital letters and bold font. It states:

> **KONECRANES SHALL HAVE NO LIABILITY TO BUYER OR ANY THIRD PARTY WITH RESPECT TO THE SALE OF PRODUCTS OR PROVISION OF SERVICES UNDER THE QUOTATION FOR LOST PROFITS OR FOR SPECIAL, CONSEQUENTIAL, EXEMPLARY OR INCIDENTAL DAMAGES OF ANY LOST PROFITS OR DAMAGES. IN NO EVENT SHALL KONECRANES BE LIABLE TO BUYER FOR ANY**

> **DAMAGES WHATSOEVER IN EXCESS OF THE TOTAL PRICE PAID BY BUYER FOR GOODS AND/OR SERVICES.**

(Emphasis sic.) *Id.* at ¶ 9.

{¶ 17} The trial court found persuasive Konecranes' argument that the warranties and damage limitation sections foreclosed the relief M&P sought. The trial court stated in pertinent part as follows:

> M&P's Amended Complaint fails to state a claim for which relief can be granted, because it seeks relief that is not provided for in the cont[r]act. First, there can be no breach of implied warranties, because the contract's Warranties section clearly states there are no implied warranties. *Id.*, Ex. A, ¶ 8. Next, the contract excludes liability for "lost profits or for special, consequential, exemplary, or incidental damages of any lost profits or damages. *Id.* Ex. A, ¶ 9. It goes on to clarify that Konecranes [sic] liability is limited to the "total price paid by the buyer for goods and/or services." *Id.* By those clear terms, M&P cannot recover the Consequential damages sought in its Amended Complaint.

(Jgmt Entry at. 5.)

{¶ 18} The trial court relied on the Supreme Court of Ohio's holding in a breach of warranty or contract action in *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40 (1989). The trial court applied the decision in holding enforceable contract provisions limiting the amount of damages recoverable in the event of a breach and an exclusion and limitation clause for being conspicuous and set off in a separate paragraph in all-capital letters. The trial court also relied on the Supreme Court's holding in *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37, that, when the language of a written contract is clear, a court's analysis is limited to the writing itself.

{¶ 19} However, the trial court was required to examine the factual allegations contained in M&P's Amended Complaint and presume all of the allegations to be true, drawing all reasonable inferences in favor of the nonmoving party, the plaintiff. If the trial court conducted such a review, this Court does not discern it from its decision. This Court's review of the complaint results in concluding that M&P *can* prove facts entitling it to recover. M&P alleges in its Amended Complaint that one of its employees was injured while properly operating the crane and using a remote control upgrade. It further alleges that,

on or about the day of the workplace accident, Konecranes' representative(s) inspected the crane and remote control upgrade and replicated the malfunction of the crane and/or remote control. Konecranes' representative(s) did not repair the defective equipment, but instead removed the remote control and placed guidewires so that the crane could be operated manually. Konecranes' representative(s) then removed the remote from M&P's premises on or about the day of the accident. M&P further alleges that it subsequently requested that Konecranes either return the remote control or reimburse M&P for the purchase price of the remote control, but that Konecranes refused to return the remote unless and until M&P signed a "General Release of All Claims and Covenant not to Sue." (Am. Compl. at ¶ 16-17.) M&P refused to sign the release.

{¶ 20} In its reply brief, M&P asserts that Konecranes did not return the remote until December 2016. M&P further asserts that, "[u]pon further inspection by M&P's expert, after the return of the remotes, the malfunction persisted. As a result, M&P was deprived of the use of the malfunctioning controls for more than two years and, even after their return, the remotes continue to malfunction and cannot be used. Notwithstanding this, Konecranes refuses to honor the contract and the warranty provisions therein." (M&P Corrected Brief at 2.) M&P claims to suffer damages because "the remotes that were returned continue to have the same malfunction and are therefore cannot [sic] be safely put back into service." *Id.* at 3.

{¶ 21} M&P alleged Konecranes breached its express and implied warranties in Count One of M&P's Amended Complaint, quoting Konecranes' standard warranty in relevant part as follows:

> 1.    WARRANTY POLICY.
>
>> ...KONECRANES warrants that all KONERANES products conform in all material respects to the description identified in the quotation to Buyer and will be free from defects in material and workmanship for two (2) years from the date of shipment.

(Am. Compl. at ¶ 22.) In Count One, M&P further alleges that "[t]he crane and/or remote control were defective in either their design, their material or workmanship," and that M&P's own injuries and damages were directly and proximately caused by "Konecranes' negligence and breach(es) in failing to properly design, supply, manufacture, assemble,

install, maintain and/or service the equipment."  *Id.* at ¶ 23.  In Count One, M&P also alleges Konecranes breached its express and implied warranties when it provided the defective equipment which directly and proximately caused various damages to M&P, "including but not limited to * * * other related business expenses, costs and losses," for which M&P sought and was entitled to receive compensatory damages.  *Id.* at ¶ 24.

{¶ 22}  M&P alleges Konecranes "specifically represented and warranted that its goods and products were and would be fit for their intended purposes and that they did meet and comply with [Konecranes'] warranties and representations as well as [M&P's] and certain regulatory and engineering specifications and standards."  *Id.* at ¶ 27.  M&P further alleges that,  when it entered into the agreement and initially accepted delivery of the cranes and remote control upgrades, it relied on Konecranes' representations "regarding the design, manufacture, purpose, merchantability, supply, fitness, appropriateness and durability of [Konecranes'] goods and products and that same met [Konecranes'] warranties and representations as well as [M&P's] and certain regulatory and engineering specifications and standards."  *Id.* at ¶ 28, 31.  M&P alleges Konecranes "breached its express warranties as well as the implied warranties of merchantability and fitness for a particular purpose" because Konecranes' crane and remote control "were defective, defectively designed, defectively manufactured and otherwise unfit for their intended use and purpose."  *Id.* at ¶ 30.  M&P claimed that it sustained damages as a direct and proximate result of Konecranes' breaches of express and implied warranties and failure to perform its duties under the agreement.

{¶ 23}  In its motion to dismiss, Konecranes argues that the damages M&P seeks are consequential in nature, and that the contract "expressly forecloses M&P's recovery of each of the types of damages it seeks in this case."  (May 29, 2019 Def.'s Mot. to Dismiss at 4.) Konecranes acknowledges that, while the contract excluded all of M&P's consequential damages, it allows for other types of damages, although M&P's recoverable damages were limited to, "at most, the contract price."  *Id.* at 5.  Konecranes states in its motion to dismiss that, "[at] a minimum, and as a matter of law, the [trial court] should limit the total damages allegations to the total cost that M&P paid: $63,517.00."  (Footnote omitted.) *Id.* at 6.

{¶ 24} M&P argues on appeal that the allegations set forth in paragraphs 5 through 7 of its Amended Complaint clearly establish that M&P purchased not only two 10-ton cranes from Konecranes but also remote controls for each crane, and that "[t]he inclusion and functionality of the remote control was clearly a material term to the transaction." (M&P's Corrected Brief at 2.)

{¶ 25} M&P further argues that it did, in fact, seek recovery for direct damages, observing that "Paragraph 15 quite clearly states that it 'suffered damages, **including but not limited to** lost employee hours, lost productivity and efficiency .... .' * * * The allegation provided examples of damages that have been incurred and was never intended to be an exhaustive list." (Emphasis sic.) *Id* at. 3-4. M&P submits the facts alleged in its Amended Complaint "sufficiently state a claim based purely on the allegation that the remote controls were defective and that, instead of repairing the remote controls, Konecranes removed [them] from M&P's possession and refused to return them without M&P signing a release. *Id.* at 4-5. M&P argues the following:

> Indeed, the First Amended Complaint alleges that M&P purchased two 10-ton cranes with remote control upgrades, that Konecranes disabled the remote controls, took the remote controls and did not return them upon request. First Amended Complaint, ¶8-9, 10-11, 16-17. The remote controls were not returned until December of 2016. [Fn. 1 omitted.] These allegations establish that, in addition to the consequential damages resulting from Konecranes' breaches, M&P also experienced direct damages. In fact, the documents attached to the First Amended Complaint establish that M&P paid $1,375.00 for the remote controls that have been disabled and removed from M&P's premises. First Amended Complaint, Exhibit A. The fact that the remotes were ultimately returned in December of 2016 does not alter the fact that M&P was deprived of their use in the intervening years from the time they were removed until they were returned. Further, the remotes were returned in a condition such that the original malfunction persists and, yet, Konecranes has refused even the reimbursement of the cost of purchase as otherwise provided under the limitation of liability provision. Thus, in addition to consequential damages, the complaint alleges direct damages resulting from Konecranes' breach.
>
> Based upon the foregoing, Konecranes breached the terms of the sales contract in as much that it continues to refuse to compensate M&P for the defective remotes as and for both

> direct and consequential damages. Accordingly, M&P's Complaint sufficiently stated a cause of action for breach of contract and, [sic] the damages sought as a result of the breach were not limited to consequential damages.

(M&P's Corrected Brief at 5-6.)

{¶ 26} The Court observes that Konecranes' Standard Warranty, attached as Exhibit 1 to Konecranes' motion to dismiss, provides a remedy procedure in the event the buyer presents a claim for defective equipment. Section 5 of the Standard Warranty states:

> **5. WARRANTY PROCEDURE**. To obtain Warranty Remedies pursuant to this Standard Warranty, Buyer must strictly adhere to the following procedure. Buyer's failure to comply with the terms of this procedure shall void this Standard Warranty.
>
> **a.** Buyer shall, within seventy-two (72) hours of any claimed nonperformance or defect in KONECRANES products, notify the KONERANES Warranty Administrator in writing of the alleged nonperformance or defect and request the issuance of a Returned Goods Authorization ("RGA") number and form.
>
> **b.** KONECRANES shall, within a reasonable time following its receipt of the completed RGA form, advise Buyer of its intention to initially accept or deny the warranty claim pursuant to the terms of this Standard Warranty. If KONECRANES elects to initially accept the warranty claim it shall issue Buyer an RGA number and advise Buyer of its intention to replace, repair or otherwise further inspect the allegedly defective products (or component parts thereof (the "Initial Acceptance"). [sic]
>
> **(1) Replacement of allegedly defective products.** Should KONECRANES provide Initial Acceptance of Buyer's warranty claim and elect to replace the allegedly defective product, or should KONECRANES elect to provide Initial Acceptance of Buyer's warranty claim through notification to Buyer that KONECRANES elects to inspect the allegedly defective products and then subsequently elect to replace the products, KONECRANES shall within a reasonable time, ship new, comparable, replacement products to Buyer F.O.B. * * *
>
> **(2) Repair of allegedly defective products.** Should KONECRANES provide Initial Acceptance of Buyer's warranty claim and elect to repair and/or permit the repair of the allegedly defective products by approved third parties, or should KONECRANES elect to provide Initial Acceptance of

Buyer's warranty claim through notification to Buyer that KONECRANES elects to inspect the allegedly defective products and then subsequently elect to repair the products, KONECRANES shall, unless otherwise agreed in writing by the Warranty Administrator, pay only those direct labor costs incurred to effectuate the repair and the cost of KONECRANES replacement products consumed during said repair provided however that the costs for all products and services were approved in advance, in writing by the KONECRANES Warranty Administrator.

**(3) <u>Inspection of allegedly defective products.</u>** Should KONECRANES provide Initial Acceptance of Buyer's warranty claim through notification to Buyer that KONECRANES elects to inspect the allegedly defective products and then subsequently determine the alleged defect is not covered under this Standard Warranty, KONECRANES shall bill Buyer, and Buyer shall pay KONECRANES any and all costs associated with the performance of inspection of allegedly defective products.

(Ex. 1 at 3, attached to Mot. to Dismiss.)

{¶ 27} It is undisputed that M&P immediately notified Konecranes that its products had malfunctioned, resulting in serious accident, and that Konecranes immediately dispatched a representative to the accident site. At the accident site, the Konecranes representative was able to operate the allegedly defective products to replicate the malfunction, after which the Konecranes representative removed the defective product (the remote control) from the crane and installed guidewires on the crane, so that the crane could be operated without the defective product, removed the defective product from M&P's possession. It also is undisputed that M&P made multiple requests to Konecranes for the return of the defective product or reimbursement for its contract purchase price. Konecranes declined to comply with M&P's requests unless M&P first executed a release waiving any and all claims against Konecranes arising from the defective part's malfunction. The Court sees nothing in the record indicating that Konecranes complied with its own warranty provision contained in its Standard Warranty in an attempt to remedy the situation. Finally, when Konecranes finally returned the defective product to M&P more than three years after the accident, the product was still defective and could not safely be put into operation by M&P. Therefore, M&P has alleged facts that Konecranes breached its Standard Warranty and is liable to M&P for direct damages.

{¶ 28} Based on the foregoing and construing the facts of the Amended Complaint in favor of M&P, the Court finds that M&P could prove facts entitling it to recovery of direct damages for, at the very least, the loss of the defective remote control. Accordingly, dismissal of M&P's Amended Complaint for failure to state a claim upon which relief can be granted is not permissible as a matter of law, and this Court reverses the decision of the trial court.

### 2. There was no valid contract because there was no meeting of the minds.

{¶ 29} M&P asserts as a second argument in the alternative that it "is not limited in its recovery because there was no valid contract from its inception." (M&P's Corrected Brief at 7.) M&P argues it entered into the purchase of the crane with the expectation that, in exchange for the purchase price, the crane would be fully functioning. *Id.* M&P argues, therefore, that under the facts alleged in the Amended Complaint, "there was no meeting of the minds, and as a result, no valid contract. Because no valid contract exists, the limitation of damages clause contained within the putative contract should be found to be wholly inapplicable and should not operate to bar M&P from recovery." (June 24, 2019 Pl.'s Memo. Contra Mot. to Dismiss at 3.)

{¶ 30} We do not find M&P's second argument to be compelling in supporting its single assignment of error. M&P's signing of the agreement was sufficient to establish a meeting of the minds, given that both parties to the agreement are commercial entities, literate, and able to comprehend the contract. *See Cuyahoga County Hosp. v. Price*, 64 Ohio App.3d 410, 415 (8th Dist.1989), quoting *Kroeger v. Brody*, 130 Ohio St. 559, 565 (1936). Moreover, the Amended Complaint alleges the contract attached thereto as Exhibit A to "comprise the agreement between the parties: the purchase order along with the proposal and acceptance, the standard terms and conditions of sale, and the standard warranty-all provided to [M&P] by Konecranes." (Am. Compl. at ¶ 21.) This Court is required to presume the truth of this allegation when reviewing under Civ.R. 16(B)(6). For these reasons, this Court finds that a contract clearly exists between the parties, a fact that is unaffected by M&P's dissatisfaction with some of its provisions after the fact.

### 3. M&P argues the contract is illusory.

{¶ 31} Third, M&P argues that the contract's limitation of damages section is unenforceable because it is unconscionable. We agree with the trial court that, while

unconscionable contract terms are unenforceable, the provision at issue in this matter is both conscionable and enforceable. This was a commercial contract negotiated by two business entities. The damages limitation section was conspicuously set off in all-capital letters and bold font. *See Chemtrol.* Additionally, the damages limitation section does not limit Konecranes' liability to a nominal amount, but specifically provides that Konecranes may be liable up to the purchase price of the crane. We agreed with the trial court's finding that this contractual limitation to be in line with Ohio law. *See* Jgmt. Entry at 6. Accordingly, we find that the limitation section is conscionable and enforceable.

## IV. CONCLUSION

{¶ 32} Having independently reviewed M&P's Amended Complaint, examined the briefs, and heard oral arguments, this Court finds under the standard of review required for motions to dismiss according to Civ.R. 12(B)(6) that M&P has alleged certain facts that if proved to be true could entitle it to recover. The trial court's dismissal is therefore improper under the law and this Court sustains M&P's sole assignment of error. Accordingly, this Court reverses the judgment of the Franklin County Court of Common Pleas and remands this matter for further proceedings.

*Judgment reversed, cause remanded for trial.*

KLATT and NELSON, JJ., concur in judgment only.

NELSON, J., concurring in judgment only.

{¶ 33} I agree that the contract's limitations on damages are enforceable. I concur in the judgment of the court, which I understand to confine any potential damages to "direct" damages as capped by the purchase costs (per the contract), and thus to exclude company claims for consequential damages (including any claims for lost employee time, lost profits, or any other damages arising "[a]s a result of" alleged injury as recited in paragraph 15 of the amended complaint).

———————————